ALDACE F. WALKER *et al.*, *Receivers*, v. L. C. BRANT-
NER.

**No. 10477.**

1. DECLARATIONS OF DECEASED HUSBAND—*to company's superintendent, as to cause of injury, admissible against widow suing railroad company for negligently causing his death.* In an action brought by a widow against a railway company for negligently causing the death of her husband, his declarations concerning his conduct, and other facts relating to the cause of the injury made after the injury was received, are admissible in evidence against the plaintiff as declarations of a deceased person made against his own interest, and the fact that the person by whom it is sought to prove such declarations is the superintendent of the defendant company, does not render him incompetent as a witness to prove them.

2. CONTRIBUTORY NEGLIGENCE—*supreme court will not decide questions of fact as to.* The testimony in the case considered, and *held*, not to present such a showing of contributory negligence on the part of the plaintiff's husband, as to require the court to declare as matter of law that the plaintiff is not entitled to recover.

3. SPECIAL INTERROGATORIES TO JURY—*refusal to submit and require answers to pertinent, error.* The refusal of the court to submit pertinent special questions of fact to the jury and require answers thereto, *held* error.

Error from Crawford District Court. J. S. West, Judge. Opinion filed February 5, 1898. *Reversed.*

In a collision with a train on the St. Louis & San Francisco Railway, at a point where the two roads cross, C. F. Brantner, a locomotive engineer, while operating an engine on the Kansas City, Fort Scott

and Memphis Railroad at Cherryvale, received injuries from which he afterward died. This action was brought by his widow against the receivers of the St. Louis & San Francisco Railway Company to recover damages for negligently causing the death of her husband. The plaintiff recovered a judgment for $3500, and the receivers bring the case here for review.

The main tracks of the Kansas City, Ft. Scott & Memphis and the St. Louis & San Francisco railroads cross, very nearly at right angles to each other, at a point 133 feet east of the intersection of the last named railroad with the Atchison, Topeka & Santa Fe railroad. At the intersection of the last named railroads on the south side of the St. Louis & San Francisco, and on the west side of the Atchison, Topeka & Santa Fe is a joint depot used by both companies. The three roads are popularly called the Memphis, the Frisco, and the Santa Fe, respectively, and for brevity will be hereafter so termed. Between the tracks of the Memphis and the Santa Fe, and south of the Frisco is a round house — as it is called — belonging to the Memphis, located at its nearest point about fifty feet south of the Frisco track, and about twenty-six feet west of the Memphis track. South from the round house is a turn table, and south from that a coal shed.

On the day of the collision, Brantner started from the Memphis depot with a train consisting of the engine, tender, thirteen cars and a caboose, and proceeded north toward the crossing. At a point 293 feet south from the crossing his train was brought to a stop, and he blew two long blasts as a crossing signal. He and his fireman then looked out from both sides of the engine to ascertain whether the crossing was clear. From that point about seventy feet of the track of the Frisco road could be seen between the

round house and the Santa Fe and Frisco depot. After giving the signal he started towards the crossing with his train. At a point opposite the turn table the view of the Frisco track west of the round house was cut off. After giving the signal Brantner took his position at the right side of the cab of the engine, and appears to have remained there until the crossing was reached. The fireman, after looking out and seeing nothing on the Frisco track, commenced picking coal and putting it in the fire, and then began sweeping the deck. The front brakeman was standing on the car next the tender when the train started for the crossing. He then got down into the cab of the engine. About the time the cab of the engine came opposite the northeast corner of the round house, a sharp blast of a whistle was heard and Brantner instantly proceeded to reverse his engine and put on the steam jam, and in an instant afterward the engine ran into a train on the St. Louis & San Francisco Railway. Brantner, in attempting to jump from his engine, was caught and received injuries from which he died in a few days.

The train on the Frisco road consisted of the engine, tender, four empty coal cars, and a caboose. At the time the train on the Memphis road started towards the crossing, the engine of the Frisco train was standing north of the Santa Fe and Frisco depot so that it was entirely concealed from the view of those on the Memphis train. At just what instant of time it started with reference to the starting of the Memphis train was a matter concerning which there was some conflict in the testimony. But it appears that very soon after the Memphis train started, Dwyer, the Frisco engineer, came out of the depot, where he had gone to get orders, climbed into the cab, gave two blasts of the whistle, and started toward the crossing.

From his starting point, the view of the Memphis track south of the round house, and of the Santa Fe track as well, was entirely cut off, but, as he passed the east end of the depot, the Memphis track, on which the Memphis train was then moving, came into view, and a considerable portion of the Memphis train must have been in plain sight, while he was moving towards the crossing, until obscured by the round house. Dwyer testified that he looked, but did not see the Memphis train; that the first he noticed of it was smoke coming over the corner of the round house; that, soon after, he saw the pilot of the engine, and, believing that he could not avoid a collision by attempting to stop, he put on steam and attempted to pass ahead of the Memphis train; and that he whistled to attract the attention of Brantner. His engine and tender passed the crossing before the Memphis engine reached it, but Brantner's engine struck the first car behind the tender in the neighborhood of the hind trucks and was derailed, running down the embankment without overturning. Brantner was found lying on the Frisco embankment with his head near the rail. A demurrer to the plaintiff's testimony was interposed and overruled.

A. O'Hara, superintendent of the Frisco railway, testified as a witness on behalf of the defendants, and stated, among other things, that he had a talk with Brantner. He was then asked the question: "I will ask you what he said with reference to what he did about looking for an engine on the Frisco after he had stopped his engine and whistled?" This question was objected to by the plaintiff: "For the reason that it is incompetent and hearsay; his statements are not admissible, because a transaction with a deceased party." This objection was sustained, and the defendants excepted. The defendants then offered to prove

by the witness that "C. F. Brantner, after the accident, and on the same day, or the next day, said, in the presence of the witness, that after he had whistled for the crossing he did not look out of the west side of the cab to see if a train was approaching on the Frisco track; but that if he had looked he could have seen the train and stopped his engine in time to have avoided the accident; that after he blew his whistle for the crossing his fireman was engaged in putting coal in the fire and in sweeping off the deck up to the time the accident occurred and did not look for a train on the Frisco road; that the front brakeman on the Gulf train was in the cab of his engine, before he whistled for the crossing and remained there until the accident occurred." This offer was objected to for the same reasons, and the objection was sustained and the testimony excluded. After the court had instructed the jury, the defendants asked that a list of questions be submitted to be answered by the jury, among which were the following:

"6. Did the said engineer, Brantner, look out of the west side of the cab of his engine towards the Frisco track after he had whistled for the crossing?"

"7. Did the fireman on decedent's engine look for a train on the Frisco road after his engineer, Brantner, had whistled for the crossing?"

"16. Was the east end of the Frisco depot and a portion of the Frisco track visible from the point where engineer Brantner whistled for the crossing?"

"17. Could the Frisco train have been seen by the crew of the Memphis train while the Memphis train was traveling from the point where it whistled for the crossing to a point 172 feet south of the crossing, if the Frisco train was as far east as the east end of Frisco depot, had they been looking?"

The court submitted twenty-eight of the questions propounded, and refused to submit ten of those asked, including the ones above quoted. The defendants

moved for a judgment in their favor on the special findings, and also for a new trial. Both these motions were overruled, and judgment was entered on the verdict in favor of the plaintiff.

*J. W. Gleed* and *J. L. Hunt*, for plaintiff in error. *Gleed, Ware & Gleed, D. E. Palmer*, and *C. Hamilton*, of counsel.

*J. D. McCleverty*, for defendant in error.

ALLEN, J. It is earnestly insisted on behalf of the plaintiffs in error that no recovery can be sustained under the facts shown by the record in this case. No claim is made that there was not a sufficient showing of negligence on the part of the engineer and other employees in charge of the Frisco train. That they might have seen the Memphis train approaching the crossing as the Frisco train came out from behind the depot is clear and beyond dispute. The Memphis train, consisting of an engine and fourteen cars, was more than five hundred feet long, and the caboose must at the time of the collision have been one hundred feet south of the point where the engine stopped and whistled. It would seem that if Dwyer, the Frisco engineer, looked, as he claims he did, he must certainly have seen the Memphis train moving toward the crossing. But counsel for the defendants do contend with much earnestness that the testimony shows that Brantner was guilty of such contributory negligence as bars a recovery. It is insisted that he proceeded towards the crossing without availing himself of the opportunity he had to look between the round house and the Frisco depot before his view was cut off; that he did not look at the earliest opportunity after passing the round house, and that he did not

2. Contributory negligence not reviewable as to facts.

keep his train under such control as to be able to stop and avoid the collision. It is also urged that in approaching a crossing where the view in one direction was obscured to such an extent as in this case, it was the duty of those in charge of the Memphis train to send a flagman forward to ascertain whether the crossing could be safely made before proceeding. These are all considerations which it was eminently proper for counsel to urge to the jury, but under all the facts disclosed by the testimony, it cannot be declared as matter of law that Brantner was guilty of contributory negligence. An engineer, while approaching a railroad crossing with his train, must take precautions commensurate with the dangers of the situation. Whether Brantner, after having stopped and given the crossing signal and having looked in the direction from which the ,Frisco train came, had a right to proceed to the crossing without taking other precautions than he did, was a question to be determined from all the evidence. There was some conflict in the statements of different witnesses with reference to the giving of signals, the relative time of starting trains, the speed at which they moved, and the position of the Memphis engine when the Frisco engine first came in sight at the east end of the depot. It is not our province to determine whether as a matter of fact, the view of the Frisco track was entirely cut off from Brantner, before the Frisco engine came in sight. Nor do we deem it incumbent on us to declare as matter of law that Brantner was bound to send a flagman forward past the round house and get an unobstructed view to the west along the Frisco track before proceeding to make the crossing. The Frisco train had to cross the Santa Fe road before reaching the Memphis, and at the crossing of the Santa Fe the engineer had a view of the

Memphis track for a considerable distance and could have seen Brantner's train approaching the crossing. Whether under these circumstances Brantner had a right to assume that he would look and would see the train is for the jury to determine. There was no error in overruling the demurrer to the plaintiff's testimony.

The defendant sought to prove statements made by Brantner after the collision with reference to his conduct immediately prior to it. This testimony was excluded. It is apparent that Brantner's declarations would have much weight with the jury, and also that the offered testimony bore directly on the vital issue in the case.

1. Declarations of deceased admissible, when.

It may be that some of the statements which the defendant claimed it could prove were in the nature of expressions of opinion, or deductions from other facts, yet being the statements of Brantner with reference to the occurrence they were admissible as declarations against interest. At the time the statements were made Brantner alone had a cause of action against the Railway Company for the injury. No cause of action had then accrued in favor of the plaintiff, for Brantner was living. The declarations offered fall within the rule allowing the admission of statements of third parties as declarations against interest. They were made by a person since deceased concerning a transaction of which he had knowledge, and were against the interest of the person making them. The cases of *Louisville, etc., Rld. Cos. v. Berry*, 28 N. E. 714, and *Johnston v. Oregon, etc., Rld. Co.*, 23 Ore. 94; 31 Pac. 283, give some support to the ruling of the trial court, but the matter does not seem to have received full consideration in either case, and we are not satisfied with the conclusions reached. The citation of *City of Bradford v. Downs*, 15 Atl. 884, is a

mistake. We have not been able to find the case. In section 147, 1 Greenleaf on Evidence (15th ed.), the author says:

"This class embraces not only entries in books, but all other declarations or statements of facts, whether verbal or in writing, and whether they were made at the time of the fact declared, or at a subsequent day. But to render them admissible, it must appear that the declarant is deceased, that he possessed competent knowledge of the facts, or that it was his duty to know them; and that the declarations were at variance with his interest. When these circumstances concur, the evidence is received, leaving its weight and value to be determined by other considerations."

See also *Lax v. Forty-second etc. C. R. R. Co.*, 14 Jones & Spencer, 448; *Stein v. R. R. Co.*, 10 Phila. 440. It is insisted that the spirit, if not the letter, of section 333 of the Code, General Statutes of 1897, prohibits O'Hara, the superintendent of the railway company, from testifying to a conversation had personally by him with Brantner; that O'Hara represented the Railway Company, and stands in the relation of a party in this case adverse to the heir at law of a deceased person. Cases are cited where the representative of a corporation who had personally entered into a contract for the corporation with one who afterward died has been held incompetent to testify concerning the transaction in an action between the corporation he represented and the personal representative of the other party to the contract.

If we concede the soundness of the rule declared in these cases, concerning which, however, we express no opinion, they are distinguishable from this. It does not appear that O'Hara was authorized to represent the Railway Company in any transaction with Brantner. The conversation, so far as the record discloses, was not connected in any manner with any

negotiations, or business transaction, conducted by O'Hara for the company. He, therefore, stands in the same relation to the conversation as any other witness to it. The error in rejecting this testimony is emphasized by the refusal of the court to submit to the jury the sixth and seventh special questions, which call for answers as to whether Brantner and the fireman looked out for a train from the west after the signal for the crossing was given. These questions were quite as pertinent as any that were submitted, and bore directly on the turning point of the case, namely, the question as to the contributory negligence of Brantner. The sixteenth and seventeenth questions also appear to be proper ones. We are at a loss to know on what theory the court struck them out. Other errors are alleged, but it seems unnecessary to discuss them. For the error in excluding the testimony as to the statements of Brantner, and in refusing to submit the special questions mentioned, the judgment must be reversed, and the case remanded for a new trial.

3. Pertinent interrogatories must be submitted to jury.