MIDDLE TENNESSEE R. Co. v. MRS. MAGGIE McMILLAN.

(*Nashville*.  December Term, 1915.)

1. **RAILROADS.  Injury on crossing.  Burden of proof.**

Plaintiff in an action at common law for injuries on a railroad
  crossing has the burden of showing, not only the infliction of
  the injury, but the negligence of the railroad.  (*Post, pp.* 496,
  497.)

Case cited and approved:  Railroad v. Crews, 118 Tenn., 52.

2. **RAILROADS.  Injury on crossing.  Contributory negligence.**

In such action the proximate contributory negligence of the party
  injured bars recovery.  (*Post, pp.* 496, 497.)

3. **ACTION.  Pleading.  Separate statement of causes of action.
   Joinder.**

The common-law and the statutory causes of action for personal
  injury on railroad crossings may both exist in the same case,
  but it is required that they shall each be presented in separate
  counts.  (*Post, pp.* 497-503.)

Case cited and approved:  Whittaker v. Railroad, 132 Tenn., 576.

Code cited and construed:  Sec. 1574, subsec. 2 (S.);  Sec. 1166
  (1858).

4. **RAILROADS.  Injury on crossing.  Declaration.  Statutory
   action.**

In an action for personal injury on a railroad crossing, a declara-
  tion distinctly showing a collision with an object or person on
  the track, or that the action is based distinctly on Shannon's
  Code, sec. 1574, subsecs. 2 and 3, requiring locomotives to sound
  a whistle or bell at crossings, and, on approaching or leaving
  a city or town, to sound the whistle or bell, indicates an intent
  to base the action upon the statute;  as the provisions are not
  concurrent with the common law.  (*Post, pp.* 497-503.)

Middle Tenn. R. R. Co. v. McMillan.

5. **PLEADING.** Duplicity. Statutory and common-law causes of action.

The insertion in a single count of averments based upon the common law will not convert the whole declaration into a common-law pleading, but will lay it open to a demurrer for duplicity. (*Post, pp.* 497-503.)

6. **RAILROADS.** Injury on crossing. Contruction of declaration. Statutory action.

A declaration in an action for damages for the negligent killing of plaintiff's husband, alleging that defendant operated a railroad, that it negligently and wantonly ran upon the wagon in which plaintiff's intestate was driving on a public highway across the track within the corporate limits of the town where he had the right to be, causing fatal injuries, that those in charge of defendant's engine negligently failed to sound the bell or whistle, or to keep a lookout ahead, that they did not use every possible means to prevent a collision, that the appliances of the engine and cars were defective, as known to defendant, that such negligence was the proximate cause of his death, and that plaintiff, his widow, sued as administratrix for the benefit of herself and children, stated a cause of action under the statute (Shannon's Code, sec. 1574, subsecs. 2, 3, and 4, and sections 1575 and 1576), requiring railroad locomotives to sound the whistle or bell on approaching or leaving a city or town, to keep a lookout ahead, and to use all possible means to prevent collision, and making a railroad negligent in such respect responsible for damages from any collision, etc. (*Post. pp.* 503, 504.)

Cases cited and approved: Railroad Co. v. Smith, 77 Tenn., 470; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415; Railroad v. Davis, 104 Tenn., 442.

7. **RAILROADS.** Injury on track. Sufficiency of evidence.

Evidence in such action *held* to sustain a verdict for the plaintiff. (*Post, pp.* 504, 505.)

8. RAILROADS.  Injury on track.  Neglgence.  Defective ma-
chinery.

In such action it was the duty of the defendant railway company
to show that its machinery was in proper condition. (*Post.
pp.* 504, 505.)                    -

9. DEATH.  Right of action.

The right of action under Shannon's Code, sec. 1574, subsecs. 2,
3, and 4, and sections 1575 and 1576, for injury from accident
or collision on a railroad track, is that of the deceased. (*Post,
pp.* 505-507.)

10. EVIDENCE.  Action for personal injury.  Admissions of de-
cedent.

Such right of action being the right of the deceased, his admis-
sions as to his negligence and inattention would be competent
as against his widow and administratrix or those succeeding
to the right of action.  (*Post, pp.* 505-507.)

Cases cited and approved:  Davidson-Benedict Co. v. Severson,
109 Tenn., 613;  Stuber v. Railroad, 113 Tenn., 305;  Sharp v.
C., N. O. & T. P. Ry. Co., 179 S. W., 377;  Overton v. Hardin,
46 Tenn., 375;  Walker v. Brantner, 59 Kan. 117;  Georgia R.
Co. v. Fitzgerald, 108 Ga., 507;  Dixon v. Union Iron Works,
90 Minn., 497;  Smith v. Moore, 142 N. C., 289.

11. APPEAL AND ERROR.  Exclusion of evidence.  Objections
in lower. court.

The action of the trial court in erroneously excluding evidence
will not be upheld because the court can see that it is incompe-
tent on some other ground than that on which the objection
was made; as incompetency not objected to is waived.  (*Post,
pp.* 507, 508.)

12. EVIDENCE.  Declarations.  Condition of declarant.

In an action by widow and administratrix for damages for the
negligent killing of her deceased husband on defendant's track,
the admissions of the deceased as to his negligence and inat-
tention, made when he was fatally injured and was suffering
great pain, though partly conscious, were not inadmissible on

Middle Tenn. R. R. Co. v. McMillan.

the ground of his stupefied or partially conscious condition. (*Post, pp.* 508, 509.)

13. **APPEAL AND ERROR.** Harmless error. Exclusion of evidence.

In such action error in the exclusion of such admissions of the deceased, not presented by any other testimony in such a strong light as that contained in the testimony of the witnesses, in view of the fact that his contributory negligence, while not barring the action, mitigated the damages, and, in view of a verdict of $5,000, was very material, and was prejudicial error. (*Post, pp.* 509-511.)

14. **RAILROADS.** Action for death. Instructions. Negligence.

In a widow's action for damages for the negligent killing of her husband on defendant's crossing, brought under Shannon's Code, sec. 1574, subsecs. 2, and 3, requiring locomotives, on approaching crossings, to sound their whistles and ring their bells for a certain distance and until the crossing is passed, and on approaching a city or town to sound the bell or whistle when one mile distant and until reaching its station, and that on leaving it the bell or whistle shall be sounded when starting and until outside the corporate limits, and subsection 4, requiring a railroad to keep a lookout on the locomotive, and, on observing any person, etc., on track, to sound an alarm whistle, and put the brakes down, and use all possible means to prevent a collision, and section 1576, declaring that no railroad observing the statutory precautions shall be responsible for any damages to persons on its road, instructions based on a paragraph of the declaration attempting to state a common-law, action, that it was the railroad's duty to exercise a high degree of vigilance and caution, according to the dangers of the crossing, by employing every means at its command, by ringing the bell and sounding the whistle, were erroneous, as the statute covered the ground. (*Post, pp.* 511-513.)

Cases cited and approved: Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415; Railroad v. Gardner, 69 Tenn., 691; Graves v. Railroad, 126 Tenn., 148.

Code cited and construed: Sec. 1574, subsecs. 2, 3 (S.); Sec. 1166 (1858).

15. **DEATH.** Contributory negligence.

In such action the contributory negligence of the deceased could go only to the reduction of damages, and it was the jury's duty to mitigate or lessen the damages if they should find that deceased was guilty of contributory negligence, according to the degree thereof whether slight or gross. (*Post, p.* 513.)

16. **RAILROADS.** Action for death. Negligence.

In an action for damages for the negligent killing of plaintiff's husband on defendant's track, it would not be exonerated from liability if it had obeyed all the statutory precautions after decedent's wagon appeared on the road in a position to be struck by the nearing train, if it had previously failed to sound the bell or whistle on approaching the crossing, as required by Shannon's Code, sec. 1574, subsec. 2, as all the precautions must be complied with. (*Post, p.* 514.)

Code cited and construed: Sec. 1574 (S.).

17. **TRIAL.** Requested instructions. Given instructions.

The refusal of requested instructions was not error where the substance thereof was contained in other instructions given at the instance of the same party. (*Post, p.* 514.)

18. **RAILROADS.** Crossing track. Question for jury. Contributory negligence.

The duty to stop, look, and listen is not a positive duty in law, applicable under all circumstances, and contributory negligence in failing to stop, look, and listen must generally be left to the jury under the circumstances. (*Post, pp.* 514, 515.)

Cases cited and approved: Railroad v. Dies, 98 Tenn., 655; Wilson v. Citizens' St. Ry. Co., 105 Tenn., 74; Railroad v. Satterwhite, 112 Tenn., 185.

19. **RAILROADS.** Operation. Injuries to persons. Instructions. Degree of contributory negligence.

In an action for damages for the negligent killing of plaintiff's husband on defendant's track, in which his contributory negli-

Middle Tenn. R. R. Co. v. McMillan.

gence would not defeat a recovery, but would afford ground for mitigation or reducing the damages, an instruction that, if deceased was familiar with the crossing, but entered upon it without stopping to look or listen, without paying any attention to the railroad and without any precaution to prevent accident, he would be guilty of "gross" negligence, to be considered in mitigation of damages, was properly refused, as the degree of negligence was for the jury, and not the court. (*Post, pp.* 514, 515.)

20. **WITNESSES. Impeachment. Predicate.**

To contradict a witness by evidence of what he said out of court to other persons on the same subject, contradictory of what he afterwards testified in court, it is essential that he shall be first asked whether he made such statements at a fixed time and place to persons named, and that the words used or their substance be stated to him to refresh his memory and to enable him to reply intelligently. (*Post, pp.* 515, 516.)

Case cited and approved: Cole v. State, 65 Tenn., 239.

FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— DOUGLAS WILKE, Judge.

E. H. & C. P. HATCHER, J. C. EGGLESTON and P. E. Cox, for plaintiff.

HENDERSON & HENDERSON and FAW & CROCKETT, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This action was brought by the defendant in error in the circuit court of Williamson county to recover damages for the alleged negligent killing of her husband, with the result that a verdict was rendered in favor of defendant in error for $5,000 damages, on which judgment was duly rendered. On appeal the court of civil appeals affirmed this judgment, and the case has reached us on the writ of *certiorari*.

The first question to be determined arises upon a construction of the declaration, in respect of whether it is a declaration under the common law, or under our statute prescribing certain precautions to be complied with by the railroad company.

The difference is important. When the right of action is based on the statute, the railway company is exonerated if it can show that before striking an object upon the road it complied with all the statutory precautions. But under this cause of action the burden of proof is on the railway company to show such compliance, and its failure to safely carry this burden results in absolute liability; moreover, contributory negligence does not bar the action, but only mitigates the damages. On the contrary, where the action is based on the common law, the burden of proof is on the injured party to show, not only the infliction of the injury, but also the negligence or wrongdoing of the railway company, and in such an action the proximate contributory negligence of the party injured bars recovery.

Upon the proper method of setting out in the declaration the statutory and common-law rights of action some confusion seems to exist in the minds of counsel, not only in the present case, but in other cases, arising out of a misconception of our authorities upon the subject, and particularly the case of *Railroad* v. *Crews,* 118 Tenn., 25, 99 S. W., 368.

It is recognized in our authorities that the two causes of action may exist in the same case, but it is required that they shall be presented in separate counts. The confusion referred to has arisen from the fact that some of the statutory precautions are identical with the requirements of the common law. We refer to those which require the railroad company to keep the engineer, fireman, or some other person upon the locomotive always upon the outlook ahead, and that, when any person, animal, or other obstruction appears upon the track, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident. These requirements having been repeatedly held in our cases to belong to the common law as well as to the statute, the difficulty is constantly presented to the minds of counsel as to whether a declaration is under the common law or under the statute. The court said in the *Crews Case* that, if the provisions above mentioned alone were referred to, there would not be enough to distinguish the action as a statutory one, that other common-law matters might be added and the whole declaration treated as

under the common law, and that under such declaration no evidence of a violation of the other statutory precautions would be competent. It has been inferred from this statement of the principle, however, that although the declaration should go further and clearly show a case based on a violation of the statutory precautions, yet that the union of the common-law matters in the same declaration would reduce the whole pleading to a common-law basis. This a misconception of the *Crews Case.* When the declaration shows distinctly that there was a collision with an object or person on the road, and the injury occurred in that manner, this is sufficient to indicate an unmistakable purpose to base the action upon the statute. *Whittaker* v. *Railroad,* 132 Tenn., 576, 580, 581, 179 S. W., 140. The same is true if the action be based distinctly on subsections 2 or 3 of section 1574, Shan. Code (section 1166 of the Code of 1858). These provisions are not concurrent with the common law, and a declaration basing the right of action upon either one of these shows unmistakably a purpose to rest the action upon the statute. If there be also inserted in a declaration of this kind in a single count averments based upon the common law, the effect will be not to convert the whole declaration into a common-law pleading, but to lay it open to a demurrer for duplicity. It is shown in the *Crews Case,* notwithstanding our modified or code pleading, that the practice of using different counts for embodying different statements of the cause of action is still preserved, that duplicity is still reprobated, and that it is the duty of the court to

see to it that the rules of pleading are substantially adhered to. Various sections of the Code are cited as authority for these provisions. 118 Tenn., 65, 99 S. W., 368.

To further illustrate these principles we set out in full the declaration in the present case, viz.:

"Plaintiff, Mrs. Maggie McMillan, as administratrix of the estate of Fred Augustus T. McMillan, deceased, sues the defendant the Middle Tennessee Railroad Company, a corporation, for $50,000, as damages, by reason of the following facts:

"The defendant, the Middle Tennessee Railroad Company, heretofore, to wit, on the ——— day of ———, 1913, was and now is a railroad corporation chartered under the laws of the State of Tennessee for the carriage of passengers and freight for hire, owning and operating a line of railroad running from the town of Franklin, in Williamson county, to Leatherwood, in Hickman county, upon which defendant ran and operated locomotives, steam engines, and railway cars.

"On the date aforesaid plaintiff's intestate, Fred Augustus T. McMillan, was traveling in a vehicle drawn by a horse along a public highway and a street of said town of Franklin known and designated as ——— street, across the railroad track of defendant company where said railroad track crosses said public highway and street, commonly known as the Boyd's Mill turnpike, and within the corporate limits of the town of Franklin, said town of Franklin being a municipal corporation; and while upon said crossing, where plain-

tiff's said intestate had the right to be, defendant com-
pany, its employees, agents, and servants, negligent-
ly, carelessly, wantonly, and recklessly ran upon and
against said vehicle in which plaintiff's intestate was
riding with said locomotive, engine, and cars, and upon
and against the body, head, neck, arms, and legs of
plaintiff's intestate, inflicting serious and fatal injuries,
causing to plaintiff's intestate great pain and suffering,
and mental angush, fear, and fright, from the effect of
which plaintiff's intestate, after lingering and suffer-
ing as aforesaid, died, to wit, on the——day——,
1913.

"Plaintiff avers that at the time and place when and
where plaintiff's intestate appeared upon the railroad
track of the defendant company, and when said engine
and cars struck and injured and killed him as aforesaid,
said engine and cars and plaintiff's intestate were with-
in the corporate limits of the town of Franklin, a town
of——inhabitants, and duly incorporated, and said en-
gine and cars were passing through said corporate lim-
its, and said engine and cars had left the depot or sta-
tion of said defendant company in Franklin, and were
passing in a westerly direction towards Leatherwood.

"Plaintiff further avers that the agents, employees,
and servants of defendant company who then and there
had control and management of said engine and cars
were guilty of carelessness, mismanagement, and gross
negligence in the premises as follows:

"(1)  Although said engine and cars were within the
corporate limits of said town of Franklin, and had left

the depot or station of defendant company some minutes later than its schedule time, yet the employees, agents, and servants of defendant company carelessly and negligently failed to sound the bell or whistle on leaving said depot or station, and at intervals until said engine and cars reached said crossing, and until they had left the corporate limits.

"(2)  When plaintiff's intestate appeared upon the railroad track of defendant company at the crossing aforesaid, neither the engineer, fireman, nor any other person upon said locomotive was upon the lookout ahead; they did not sound the alarm whistle nor put down the brakes, and did not employ every possible means to stop the train and to prevent a collision.

"(3)  Plaintiff further avers that at the time of said collision said employees, agents, and servants of defendant company who then and there had the control and management of said locomotive, engine, and cars had inferior and defective engine and cars, with inferior and defective brakes, and other appliances, for the control of said locomotive engine and cars, and the track of defendant company at the time and place aforesaid was in defective condition, all of which was known to defendant company.

"(4)  Said crossing where said collision occurred was an exceedingly dangerous crossing, in that it was obscured by an embankment or cut made and constructed by defendant company, and by trees and other obstructions which obstructed the view of said crossing, and in approaching said crossing the employees, agents,

and servants of defendant company in charge of said train and cars did not give notice of their approach thereto, and did not take the necessary precautions to warn travelers along said highway and street of the approach of said engine and cars:

"Plaintiff further avers that plaintiff's intestate was on the railroad track as aforesaid when he was struck, injured, and killed as aforesaid, as he had a right to be, without fault or negligence on his part, and that he suffered the wrong, injuries, and death aforesaid by reason of the carelessness, mismanagement, and gross negligence of said employees, agents, and servants of defendant company in and about the premises, without fault or negligence on his part, and that said carelessness, mismanagement, and negligence was the proximate cause of his injuries and death, and that defendant company was then and there a railroad company within the purview of the law.

"Plaintiff's intestate, Fred Augustus T. McMillan, left surviving him his widow, Mrs. Maggie McMillan, and the following named children, to-wit, . . . all infants of tender years, for whose use and benefit this suit is brought.

"Plaintiff, Mrs. Maggie McMillan, was heretofore appointed administratrix of the estate of the said Fred Augustus T. McMillan by the county court of Williamson county, Tenn., which trust she still holds, and her letter of administration is here to the court shown.

"Plaintiff therefore avers that a right of action has accrued to her as such administratrix to have of and

from said defendant company the said sum of $50,000 above demanded, and therefore she sues and demands a jury to try this case.''

The whole of this declaration, down to section 4, is certainly under the statute. Section 4 is apparently under the common law, and probably supported by some intimations thrown out in one or more of our previous cases (*Railroad Co.* v. *Smith,* 9 Lea [77 Tenn.], 470; *Chattanooga Rapid Transit Co.* v. *Walton,* 105 Tenn., 415, 58 S. W., 737), but was really inapplicable to the case as made, as subsequently shown herein in the disposition we make of assignments Nos. 8 and 9. So this paragraph of the declaration might have been wholly disregarded, but it was not disregarded; on the contrary, it was treated as setting forth a true cause of action against the plaintiff in error under the common law, and the jury were instructed from that standpoint in a manner to create confusion in their minds.

Treating section 4 as stating a common-law cause of action, its insertion in the declaration made it demurrable for duplicity, and, if this objection had been made in the court below, no doubt, the proper correction would have been effected, either by striking out that section as surplusage, or by so striking and then adding another count covering this averment. With section 4 stricken out, and the paragraph immediately following, which paragraph was mere surplusage (*Railroad* v. *Davis,* 104 Tenn., 442, 448, 58 S. W., 296), the declaration would have been wholly under the statute.

There was no demurrer, however, filed for duplicity, and the parties went to trial upon the declaration as it stood, treating it as stating a good statutory cause of action, and a good common-law cause of action also.

We have just said that the declaration, leaving out section 4 and the paragraph following it, is a good declaration under the statute. It is very full, and perhaps unnecessarily so, since, as held in *Railroad* v. *Davis,* supra, and *Chattanooga Rapid Transit Co.* v. *Walton,* 105 Tenn., 415, 418, 58 S. W., 737, much less would have sufficed; but we see no objection to the fullness of the statements, omitting section 4 and the paragraph immediately following.

We shall now consider the first assignment of error, which is that the court of civil appeals erred in not reversing the judgment because the trial judge erroneously overruled the motion for peremptory instructions, and because that court refused to sustain the assignment that there was no evidence to support the verdict. This assignment must be overruled. It is not denied that defendant in error's husband was killed while driving across the track. The statute makes it the duty of the railway company, on leaving a town or city, to sound the bell or whistle when the train starts and at short intervals until it has left the corporate limits. There is evidence to the effect that the whistle was sounded only once, and that was at a distance of from nine hundred to one thousand one hundred and thirty-seven feet from the place of the accident, and below a curve. The distance from the depot from

which the train started the morning of the accident to the place of the accident was three thousand five hundred and ninety-two feet. There is evidence that the bell was not sounded at sufficiently short intervals. One witness, Wiltshire, at least, testifies that the train was coming silently as it bore down towards the place of the accident. In addition to this, there is evidence to the effect that the brakes on one of the cars was defective. It is the duty of the railway company to show that its machinery is in proper condition. 105 Tenn., 415, 423, 425, 426, 58 S. W., 737.

The second assignment of error is based on the action of the court of civil appeals in refusing to hold that the trial judge committed error in excluding the following evidence which the plaintiff in error offered on the trial. This evidence was as follows: The plaintiff in error offered in its defense the witness C. L. Williams, who testified that on the same day of the accident, in the afternoon, he asked the deceased how it happened that he drove on the track. Now to quote the witness:

"He said he didn't know; said he wasn't thinking about the railroad. Q. Did he make any statement as to what he was doing immediately before the accident? A. He said he didn't know what he was doing, or was thinking about. Q. Did he make any other statement to you about how the accident occurred, or what effect it had upon him? A. Why, he said— As best I remember, I asked him how come him to drive on the track; couldn't he see the train? He said he wasn't

thinking about the railroad; said it all seemed blank to him.''

Objection was made to this evidence by the defendant in error on the ground that it was hearsay, and hence not competent. This objection was sustained by the trial judge, and the testimony not permitted to go before the jury.

On the same objection made by defendant in error the trial judge ruled out the following evidence offered through the witness C. G. Bradley, who testified that he saw the deceased immediately after the accident:

''Q. At the time you heard Mr. McMillan (the deceased) make this statement two or three minutes after the accident, what did he say? A. Well, he said he didn't hear the whistle and the train, and wasn't paying any attention to the railroad. Q. Did he say anything else? A. Yes, sir; said he didn't hear any one hollering or see any one waiving at him, or pay any attention to the railroad, or see the train in any way; if he had, he wouldn't have drove on the track. Q. Did he say, if he had been paying any attention, of course, he wouldn't have driven on the track? A. Yes, sir; he wouldn't have driven on the track if he had been paying any attention to the railroad or the train.''

On the same objection made by defendant in error the trial judge ruled out the evidence of the witness D. G. Buchanan offered by the plaintiff in error, viz.:

''Mr. Buchanan, did you hear Mr. McMillan make any statement about how this accident occurred, or what he was doing after you had taken him over there?

A. Yes, sir; I did. Q. What did he say? A. He made a remark to a lady there. She asked him did he see her waving at him. He said no he didn't; said he wasn't paying any attention at all to her waving, or to the railroad, or the train. Q. Did he say anything about driving upon the track? A. He said if he had knew, had saw her, and been thinking of going across the track, he wouldn't have drove upon the track."

There can be no doubt that the action of the trial judge in ruling out this testimony on the ground stated was erroneous. The right of action in cases of this character is that of the deceased. *Davidson-Benedict Co.* v. *Severson,* 1 Cates (109 Tenn.), 613-623, 72 S. W., 967; *Stuber* v. *Railroad,* 5 Cates (113 Tenn.), 305, 87 S. W., 411; *Sharp* v. *C., N. O. & T. P. Ry. Co.,* 179 S. W., 377. It necessarily follows that any admission made by him would be competent against those who succeeded to the action; in this case his administratrix, who is his widow. *Overton* v. *Hardin,* 6 Cold. (46 Tenn.), 375; *Walker* v. *Brantner,* 59 Kan., 117, 52 Pac., 80, 68 Am. St. Rep., 347. And see *Georgia R. Co.* v. *Fitzgerald,* 108 Ga., 507, 34 S. E., 316, 49 L. R. A., 175; *Dixon* v. *Union Iron Works,* 90 Minn., 497, 97 N. W., 375; *Smith* v. *Moore,* 142 N. C., 289, 55 S. E., 275, 7 L. R. A. (N. S.), 684, 689, 690.

It is insisted in behalf of the defendant in error that, if the court can see that the evidence is incompetent on any other ground, the action of the trial judge will be upheld, although such other ground or objection was not offered. This is a mistaken view. Incompetency

not objected to is waived. Any other rule would result in setting a trap for the other side of the controversy. When objection is made to evidence, and specified, this notification may enable opposing counsel to obviate it, and thus make the evidence competent, but, if the party making an erroneous objection should be allowed to withhold a good objection and make that in the appellate court, where there can be no possibility of avoiding the difficulty by other evidence, this would give a very great advantage to the party so withholding his real objection, and result in corresponding disadvantage and injustice to the opposing litigant. 1 Thompson on Trials, sections 693 and 698.

The learned court of civil appeals declined to pass upon the validity of the objection made, but held the trial judge was justified in ruling out the evidence on the ground, along with other reasons stated:

That deceased was at the time the statements were made "in a comatose or stupified condition, and either wholly or partially unconscious, and did not fully comprehend what he was saying. It was for the trial judge," continued that court, "to determine as a preliminary question whether the statements were made by the deceased at a time and under such circumstances and while he was in such condition as authorized proof of them."

The trial judge, however, did not undertake to determine this question, but acted only on the objection made by the defendant in error as to the hearsay character of the evidence. Furthermore, we are unable to

ascertain from the evidence that the deceased was in such a condition as indicated in the opinion of the court of civil appeals. The three witnesses whose testimony was excluded say that he was rational at the time, and the witness Wiltshire, who testified for the defendant in error, said the same thing, and Dr. Howlett, who examined him later, being asked whether he was conscious or unconscious, answered:

"Why he was partly conscious; he was a little bit stupified, but he was conscious when I saw him."

The evidence should have gone to the jury. Its weight, no doubt, would have been affected by the fact that Mr. McMillan was very desperately injured, and was suffering great pain. We have no doubt that the evidence was competent; certainly it was not incompetent on the ground of being hearsay. Indeed, the counsel for defendant in error did not advance the view in the trial court that the mind of McMillan was in such condition that he did not know what he was saying.

It is insisted, however, in behalf of the defendant in error that there should be no reversal for the error mentioned, because the merits were reached; furthermore, because there was other evidence of the same kind as that embraced in the testimony ruled out. There was no other evidence presenting the negligence and inattention of the deceased in such a strong light as that contained in the testimony of the witnesses, Williams, Bradley, and Buchanan. Besides this, we are unable to say that a just result was reached with this evidence left out. It is true, in our view of the case on

the evidence as it stands in the record, on the first assignment because of the failure to properly use the whistle or bell under the statute, and also because of the defect in the brakes on one of the cars, the defendant in error was entitled to a verdict for some amount. Nevetherless the evidence excluded was of very great importance for the purpose of enabling the jury to ascertain the amount of the damages that should be allowed. It is shown by other evidence in the record that the approach to the railroad track for the distance of two hundred and twenty-six feet was obscured by trees and undergrowth, and that by reason of this obscuration and the sharpness of the curve the train could not have been seen until the traveler was right at the track. It also appears that there is evidence to the effect that on account of the rattling of the milk bottles in the wagon of the deceased as he approached the track the difficulty of his hearing the approaching train was greatly increased. There is likewise a lack of evidence to show that the deceased stopped his wagon, or that he listened at all, or that the negro boy who was with him listened. The negro boy testified that they looked, but, although much pressed, he never did say that they listened for the train. The negro boy testified that they looked before they went on the track; but it appears that at this time the train was only about seventy-five feet away; that they did not see it until they got on the track. In view of all these facts we think that the exclusion of the evidence affected the result. If the jury believed the statements of the three wit-

nesses whose testimony was excluded, they probably would not have allowed the amount which they did allow as damages. In this view of the case we think the error was a reversible one.

In respect of the supposed common-law duty of the plaintiff in error, based on the averments of paragraph 4 of the declaration, the trial judge charged the jury, in substance, that if they found these averments true under the evidence, it was the duty of the plaintiff in error to exercise "a high degree of vigilance and caution, commensurate with the dangerous character of said crossing," by employing every means at its command, "by ringing the bell and sounding the whistle" as its train approached the crossing to warn persons traveling upon the highway in the direction of the railway track with a purpose to cross it, etc. He also charged that on approaching such a crossing it was the duty of the railway company to employ every means at its command that would most effectually warn those persons about to cross the track. The crossing in question was within the corporate limits of the city of Franklin.

It is insisted by plaintiff in error that these instructions were erroneous because the statute covered the ground, and no other precautions could be required. And so thinks the court. The statutory provisions directing what shall be done when an object or obstruction appears on the track, of course, cannot be applied to the case of a warning required to prevent persons from actually entering on the track. But subsections

2 and 3 of section 1574 of Shannon's Code (section 1166 of Code of 1858) do contain such warning provisions. Subsection 2 directs that, where a public road crossing is designated by a special warning board erected by the county authorities, the whistle or bell of the locomotives shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals until the train has passed the crossing. Subsection 3 provides that on approaching a city or town the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals until it reaches its depots or station, and on leaving a town or city the bell or whistle shall be sounded when the train starts, and at intervals until it has left the corporate limits. Subsection 4 prescribes what shall be done when an obstruction appears on the track. Section 1575 declares that, if these precautions are not complied with, in subsections 2, 3, and 4, meaning all of these (*Chattanooga Rapid Transit Co.* v. *Walton*, 105 Tenn., 415, 419, 58 S. W., 737; *Railroad* v. *Gardner*, 1 Lea [69 Tenn.], 691), the railway company shall be responsible for all damages to persons or property resulting from any accident or collision that may occur, and section 1576 declares that no railroad company that observes the statutory precautions shall be responsible for any damages to persons or property on its road. We think this latter section would preclude any common-law requirement for any additional warnings at any crossing within a city or town. The statute sets forth the full duty of the railway company, to-

gether with its reward of full indemnity for full compliance, and the resulting of full liability for any dereliction. This view is in accord with the reasoning of the court in *Graves* v. *Railroad,* 126 Tenn., 148, 148 S. W., 239, as well as a necessary deduction from the statute.

The foregoing matter covers assignments Nos. 8 and 9, and it is apparent they must be'overruled.

Assignment No. 10 is overruled, and 11 is sustained. The former complains that the trial judge instructed the jury simply that the contributory negligence of the deceased "can go only to the reduction of damages." By this it was to be understood by the jury that such contributory negligence could not, under the statute, abate the action. However, the trial judge should have given the instruction the refusal of which is complained of in No. 11. This instruction plainly told them that it was their duty to mitigate or lessen the damages if they should find that deceased was guilty of contributory negligence, and that they should measure this reduction of damages in proportion to the degree of such contributory negligence, whether slight or gross.

What has been said in disposing of assignments Nos. 8 and 9 renders it unnecessary for us to consider assignments Nos. 13, 15, 24, and 25, since all of these either directly or incidentally affect the supposed common-law feature of the case, which is now eliminated, and, no doubt, will be discarded on the new trial.

Assignment No. 17 is overruled. The request was expressed in such terms as would have justified the jury in believing that the plaintiff in error should be exonerated, if it had obeyed all of the statutory precautions after the wagon appeared on the road in a position to be struck by the nearing train, although it had previously failed to comply with the requirements of subsection 2 of Shannon's Code, section 1574, referred to supra. Such an instruction would have been erroneous, since all of the precautions must be complied with.

Assignment No. 18 is overruled on the same grounds.

Assignments Nos. 20, 21, and 22 are overruled, on the ground that the substance of the request for instruction to the jury contained in each was sufficiently given by another instruction which the trial judge gave at the instance of the plaintiff in error.

Assignment No. 23 complains of the refusal of the trial judge to give in charge the following instruction offered by the plaintiff in error, viz.:

"If the deceased, Fred McMillan, was familiar with this Boyd's Mill crossing, and had been crossing it daily for several months, and knew the situation, and, notwithstanding this, he entered upon this railroad track without stopping to look or listen, and without paying any attention whatever to the railroad, without noticing it and without thinking about the railroad, or train might be approaching, and without taking any precaution himself to prevent an accident, he would be guilty of gross negligence, and such negligence should

be taken into consideration by you, and should mitigate any recovery which plaintiff might otherwise be entitled to.''

There was evidence on which to base the instruction, and it should have been given but for the use of the word ''gross'' therein. While it is true that the duty to stop, look, and listen is not a positive duty in law applicable under all circumstances, and it is furthermore true that in general it must be left to the jury to say whether under the circumstances of the given case the party was negligent in failing to stop, look, and listen (*Railroad* v. *Dies,* 98 Tenn., 655, 41 S. W., 860; *Wilson* v. *Citizens' Street Railway Co.,* 105 Tenn., 74, 58 S. W., 334; *Railroad* v. *Satterwhite,* 112 Tenn., 185, 79 S. W., 106), yet no one can doubt that the facts stated in the instruction, taken altogether, made out a case of negligence in law. Yet because of the use of the word ''gross'' the instruction was not technically accurate, and the trial judge was justified in refusing to give it to the jury. A request for instructions must be accurate before the refusal can put the trial judge in error. The question of the degree of negligence is for the jury, and not for the court.

Assignments Nos. 26 and 27 are overruled. In order to contradict a witness by evidence of what he said out of court to other persons on the same subject contradictory of what he afterwards testified in court, it is essential that the witness to be impeached shall be first asked whether he made such statements at a time and place fixed, and to a person or persons named, and the

words used or their substance must be stated to him, in order to refresh his memory, and to enable him to reply intelligently in respect of the matter. *Cole* v. *State,* 6 Baxt. (65 Tenn.), 239. The impeaching questions referred to in these assignments do not sufficiently comply with the rule stated.

The twenty-ninth assignment is addressed to the excessiveness of the verdict. Since the judgment must be reversed, and the case remanded for a new trial on other grounds, we do not deem it proper to consider this subject.

Reverse and remand. The defendant in error will pay the costs of the appeal.