## Reed et al. v. Philpot's Administrator et al.

(Decided October 7, 1930.)

A. F. BYRD for appellants.

HUGH RIDDELL and H. M. SHUMATE for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

This suit for damages was filed by the widow and children of Henry Reed against the administrator of R. C. Philpot's estate, Joe Spivy, and the sureties on the bond of Philpot, as chief of police of the city of Irvine. The jury returned a verdict for the defendants, and the plaintiffs appeal.

The petition alleges that Reed was a deputy sheriff of Estill county, and that, while he had one Estes in custody on a charge of transporting and possessing intoxicating liquor, Philpot, while acting in his official capacity, had summoned Spivy to assist him, and the two attempted to arrest Estes and take him unlawfully and forcibly from the custody of Reed, and also to seize a suitcase containing intoxicating liquor. It is charged that in attempting to do so they maliciously and wrongfully, not in their self-defense or apparently necessary self-defense, and by using more force than was necessary or

believed by them to be necessary to make the arrest, assaulted and wounded Reed by striking him with a pistol and by shooting him, from which he died; Philpot and Spivy each aiding and abetting the other. In the affray both Reed and Philpot were killed, and the two other men wounded.

The evidence introduced in behalf of the plaintiffs was that Estes, a pool room operator and bootlegger, got off the midnight train on August 20, 1920, at Ravenna, which adjoins the city of Irvine, with a suitcase of whisky. He was drinking, but does not remember that he was drunk. Reed, a deputy sheriff of Estill county, had been at the station about an hour waiting for the train. Joe Spivy, a railroad policeman, was there with a fellow officer, Rollings. A few minutes after the train came in he saw a man with liquor, as he supposed, going around the depot, and they followed him. There they met up with Philpot, and he asked which way Reed and Estes had gone. They told him, and he said: "Come you fellows and go with me." Rollings declined to go, and advised Spivy it was not his place to do so either, but Spivy said he would go with Philpot, and accompanied him.

Estes testified that Reed had arrested him when he got off the train and had started to jail with him, but did not give any reason for the arrest; that, when they had gotten within the limits of the city, Philpot and Spivy drove up in an automobile, and Philpot stated: "Come on Joe, we will take them now," drew his pistol and climbed out of the car. Addressing Estes, Philpot charged him with being drunk or drinking or having whisky—the testimony is indefinite—and demanded of Estes that he "hand over that grip," or something of that kind. Reed told Estes not to do it, and grabbed it himself, informing Philpot that Estes was his prisoner and that he would examine the grip at the jail. There was considerable argument between the two officers, according to Estes, and both of them had their pistols drawn. In a few moments, however, the four men continued the journey together a short distance, Reed carrying the suitcase. He told Philpot, "You are perfectly welcome to go on down with me or anywhere you want to go." Spivy was just back of them, and Philpot told him to go cut the switch off the car, the engine of which had been left

running, and the lights burning. Spivy did so. Estes further testified:

"So they come on, must have been twenty-five or thirty yards from there, Philpot, he seemed to get awful mad because Mr. Reed wouldn't give him the grip and let him look into it. He told him, he said, by God he was going to see in the grip or something, he was police of Irvine, he was going to look in that grip, something to them words, Reed told him no, said, 'When I turn this boy over to the jail or put him in jail, I will turn the grip over to the court, you can look in it or whoever wants to, I don't care who looks in it.' About that time I looked around, he was talking so sassy, just as I looked around he struck Mr. Reed by the side of the head with a gun, he fell right back in the building like, about the time he got there then there was a gun fired and struck me."

The building referred to was under construction, with a low foundation or some obstruction along the pavement over which Reed fell. Several shots were fired, and Estes says that Spivy ran up and began shooting "right down in on them" back in the building just off the sidewalk. He could not or would not say whether either Philpot or Reed fired, because both were out of his sight. Spivy shot him (Estes). It is almost impossible to tell from Estes' evidence as to who began the shooting, or, indeed, as to who fired the shots which killed either Philpot or Reed. A doctor who examined Philpot's body stated he had been shot apparently with a .44 or .45 bullet which went through his neck and carotid artery and caused instant death. It was established that Reed's pistol was a .45 caliber. Another witness testified Philpot was shot in the arm, in the neck, and in the small of the back.

The defendants denied the allegations of the petition and pleaded self-defense and the defense of each other on the part of Philpot and Spivy. In the practice of the case they appear also to have gone on the theory that Reed was associated with Estes in bootlegging and had met him at the depot to escort him or to get the liquor from him. More than one witness testified that Reed had sold liquor or had it in his possession, and a witness stated that during the afternoon, upon his inquiry, Reed

told him he did not have any whisky then, but would have some by the next morning. They undertake to justify the action of Philpot in attempting to arrest Estes and take him from the custody of Reed on this ground. It may be said that Estes denied any arrangements with Reed, and stated he only knew him slightly.

There is no evidence introduced by the defense as to the immediate facts except a statement made by Reed to a physician about thirty minutes after being shot, which was admitted over the objection of the plaintiff. The substance of that statement is that he (Reed) was bringing Estes down the street, and he thought Philpot and Spivy were trying to take his prisoner away from him; they had an argument; he called Philpot an epithet, and Philpot hit him in the chest with his pistol, which caused him to stumble over the foundation into the building. Said he: "Just at that time I raised up and shot him" (Philpot), and "he just fell over dead." On cross-examination, the witness testified that Reed said he fired as he fell and did not wait until he hit the ground. He further stated: "Just at that time I raised up and saw Joe Spivy coming around; I shot him; the first shot Joe Spivy cut my finger off, knocked my pistol out of my hand, then he run up and finished me." Reed stated that he had fired the first shot, and that he would have got both Philpot and Spivy if his pistol had not been shot out of his hand. Philpot, therefore, did not at any time fire his pistol, according to Reed's statement.

The defense also proved that some time before the killing there had been a difficulty between Philpot and Reed over about the depot, and, as Reed was telling the witness about it, Philpot approached, and Reed said:

" 'Mr. Philpot, you are a bigger man than I am, but if you ever treat me that way again, I am going to kill you.' He walked on up the street, he told him that was a game two could play, so he went on."

It is noted that Spivy did not testify on the trial.

It is contended by the appellants that the admission of Reed's statement is prejudicial error. As a general rule declarations of a deceased person, whose death is the subject-matter of the civil action, as to the facts or circumstances attending his fatal injury, are not admissible; but where the statement of fact is a part of the res gestæ or, as here, is against interest, it is admissible

as substantive evidence against those in privity with him. 17 C. J. 1307; 1 R. C. L. 502. We quote from section 242 of Jones on Evidence:

"It is a little difficult to regard the representative of a decedent as a privy except the chose in action is accepted as property, and the courts incline to this view, seeing that the form of the action was unknown to the common law. It is generally recognized the representative takes the place which the decedent would have filled in a direct action for personal injury, and there need be no doubt, in such case, his statement could be used against him. In the Georgia case noted the court, speaking of the widow suing, said that even were she not a privy in law with him, this evidence was admissible under the rule that 'self-disserving' declarations made by a deceased person having peculiar opportunities to know the truth as to the matter under investigation may be proved even in cases between third parties, none of whom claim under or through him."

See, also, Walker v. Brantner, 59 Kan. 117, 52 P. 80, 68 Am. St. Rep. 344.

Wigmore traces the history of this exception to the rule excluding hearsay evidence, and shows that it had its origin more than a century ago. Sections 1455 to 1476. The reasoning upon which the exception is based is fully applicable to the statement of Reed, for he had the peculiar means of knowing the matter stated; there was no probable motive to falsify the facts; and it was opposed to his pecuniary and proprietary interest. Greenleaf on Evidence, sec. 148. It would also have been against his penal interest had he survived and become the subject of criminal prosecution. Compare Sasseen v. Farmer, 179 Ky. 632, 201 S. W. 39, and Louisville & N. R. Co. v. Rowland's Adm'r, 215 Ky. 663, 286 S. W. 929. The evidence we consider to be competent.

It is thus to be seen, according to his own statement, that plaintiffs' husband and father, upon whose death the suit is founded, killed Philpot, who never fired a single shot at him, although he had struck him with his pistol; also that, after he had killed Philpot and as Spivy was approaching him he first fired, and then Spivy shot the pistol out of his hand and later inflicted the fatal wound.

Under the view which we have taken of the case, it is not necessary to enter into a consideration of the question as to whether or not Philpot's death terminated his responsibility for Spivy's acts subsequent thereto, or the responsibility of Philpot's sureties for Spivy's acts either before or after the principal's death.

The instructions to the jury were predicated upon the theory that Philpot had summoned Spivy to assist him in his official duty and whether there was or was not an attempt made to arrest Estes or Reed.

It is to be observed that there was no evidence that Philpot or Spivy undertook to do anything before the affray began except that Philpot demanded possession of the suitcase, which he suspected contained liquor. Though he addressed a remark to Spivy which would indicate a purpose to arrest Reed and Estes, the evidence does not warrant the conclusion that he actually attempted to do so. Even so, he had no authority to arrest merely on suspicion or information. Bowman v. Commonwealth, 211 Ky. 118, 276 S. W. 1057. Although Philpot may have in good faith believed that Reed was only convoying Estes, he did not have the legal right as an officer to take possession of the suitcase merely on suspicion. Ash v. Commonwealth, 193 Ky. 452, 236 S. W. 1032. Therefore the court need not have given an instruction on the theory of an attempted arrest. But the giving of it was in conformity to a request of the plaintiffs' counsel or rather was similar to an instruction asked by him.

The court ought to have sustained the motion for a peremptory instruction for the sureties on Philpot's bond for they could not have been held liable for his act under the circumstances; it being the established rule that the liability of a surety depends upon whether the wrongful conduct of the officer was an official act within the scope of his authority. Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, 3 A. L. R. 1619; Lewis v. Treadway, 211 Ky. 140, 277 S. W. 309; Hogg v. Lorenz, 234 Ky. 751, 29 S. W. (2d) 17.

Not being an official act, it results that the encounter was purely personal and related only to Philpot and Spivy. An instruction based upon that idea would have been the proper one, for there was sufficient evidence, we think, to justify the submission of the case to the jury on the issue as to whether or not these two defendants

had maliciously and wrongfully assaulted Reed within the terms of section 4 of the Statutes. But the plaintiffs did not ask for an instruction upon that ground, and it is the rule of practice that it is not the duty of the court to instruct upon a theory of the case for which the parties did not ask an instruction. Note to section 317, Civil Code of Practice.

From a very careful consideration of the case, the court concludes that the rights of the plaintiffs were not prejudiced by any error appearing in the trial.

The judgment is therefore affirmed.

Whole court sitting.