EMMA M. DIXON v. UNION IRONWORKS.[1]

November 20, 1903.

Nos. 13,581—(61).

**Master and Servant—Apparent Risk.**

The rule requiring the master to exercise a general supervision over the work of his servants does not require their protection from the negligence and carelessness of fellow servants, nor extend to dangers and risks that are apparent and obvious, or that might be discovered by the exercise of reasonable care and prudence.

**Fellow Servant.**

It is *held*, on the facts stated in the opinion, that the superintendent in charge of defendant's machine shop was not, in respect to the negligence charged in the complaint, a vice principal, but, on the contrary, a fellow servant of plaintiff's intestate; and, further, that plaintiff's intestate assumed the risks and dangers resulting in the injury complained of.

**Declaration of Decedent.**

Declarations and statements of a deceased person as to the cause of an injury which resulted in his death, tending to exculpate his employer from the charge of negligence respecting the injury, *held* competent evidence against his administratrix in an action for damages against the employer under the statute for negligently causing such death.

Action in the district court for Hennepin county by plaintiff as administratrix of the estate of Charles E. Dixon, deceased, to recover $5,000 for the death of decedent. The case was tried before Brooks, J., who directed a verdict for defendant upon the close of plaintiff's testimony. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Benton & Molyneaux,* for appellant.

*Cobb & Wheelwright,* for respondent.

BROWN, J.

Action to recover for injuries alleged to have been caused by, the negligence of defendant. A verdict was directed for defendant on the trial in the court below, and plaintiff appealed from an order denying a new trial.

[1] Reported in 97 N. W. 375.

There is practically no dispute about the facts in this case, which are stated in the memorandum of the trial court substantially as follows: Defendant is a corporation engaged in manufacturing and repairing heavy iron machinery. One Trevillyan was its foreman, and had the general management and control of the shops, and complete charge and direction of all the work and servants employed by defendant. The machine shop where the accident complained of occurred was eighty by forty-five feet in area, and defendant there manufactured and repaired heavy mill machinery. On one side of the shop was an entrance and passageway for wagons, upon which machinery was brought in and taken away. Near the entrance, and within the building, was a crane, used in lifting heavy machinery on and off wagons and from place to place within the shop. The crane was eighteen feet high, and had a boom eighteen feet long; and a considerable portion of the floor was naturally and necessarily covered with machinery and castings of various kinds. Plaintiff's intestate, an employee of defendant as a mechanic, was at the time of the accident engaged a short distance from the crane in setting up an "edger," a heavy piece of mill machinery made up of numerous parts. He had previously set up a large number of such edgers, but had done so at a point some distance from where he was engaged at the time in question, and where he would not be interrupted or interfered with by the operation of the crane. A wagon had been backed into the passageway upon which to load a pulley wheel, consisting of two parts, each weighing about three thousand pounds. One of these parts lay upon the other and upon the side of the passageway nearest where plaintiff's intestate was engaged in setting up the edger, and near, also, a heavy casting called a "flange wheel," which lay loose near another heavy casting. The foreman, Trevillyan, was overseeing the work of loading the pulley wheel onto the wagon, and had full charge of that work. One part of the wheel had been placed upon the wagon, and Trevillyan and other servants were engaged with the crane in lifting the other part, and as they did so, and as the crane raised the wheel from the ground, it tilted, and in some way swung against the piece of machinery near plaintiff's intestate, causing it to fall upon him, inflicting injuries from which he soon after died.

As stated, deceased had set up a large number of edgers, but, according to a uniform custom of the shop, had performed that work at a place near the center thereof, and at a perfectly safe distance from the crane and other machinery. He selected the particular place on the day in question of his own motion. He was ordered to do this work by the foreman, but chose to perform it at a point near the crane, and this notwithstanding the fact that a fellow servant admonished him that it would be dangerous to do his work at that place. The complaint alleges, in respect to the negligence relied upon for a recovery, that the casting which fell over upon and injured deceased was negligently placed and allowed by defendant to remain upon the floor of the shop near the iron pulley wheel, or against the same, in such manner that it would be knocked over by said pulley wheel; and that defendant negligently attempted to load the pulley wheel upon the wagon, and negligently handled and lifted the same, because of which the accident occurred. It is not alleged or claimed that deceased was not provided with a safe place in which to work, nor is it alleged that any appliance or instrumentality there used was defective, nor that any of his fellow servants were incompetent or unfit for the service in which they were engaged, nor are there any allegations that defendant failed to promulgate proper rules and regulations for the conduct of its business. The negligence relied upon for recovery is attempting to load the pulley wheel upon the wagon in such manner as to permit it, when raised by the crane, to fall against the piece of machinery which fell upon deceased and injured him.

It is contended by appellant that in supervising the loading of the pulley wheel and in carrying forward that work Trevillyan was a vice principal, and charged with one of the master's absolute duties to the servant, which he failed properly to perform. The work engaged in at this time was the ordinary and usual work of defendant, such as the superintendent and other servants were daily engaged in. Recovery is not sought upon the ground that the superintendent was guilty of any personal negligence, but it is claimed that it was defendant's absolute duty to exercise a proper supervision over the work of loading the pulley wheel, and ordinary care in preventing accidents likely to result from the performance of that work; and that the superintendent, whom defendant had placed in charge thereof, failed to per-

form it. There was nothing complicated about the work; no hidden risks or dangers surrounding it; and it was not unusual at defendant's shops.

It is true that the superintendent had general charge and supervision of defendant's business and this particular work, but from this it does not follow that he was a vice principal. A superintendent or foreman is not necessarily a vice principal simply because he occupies that position. Title or rank has not of itself any special significance in this connection. When engaged with the other servants in the common employment of the master, the superintendent or foreman is a fellow servant, and for his personal negligence the master is not responsible; but when clothed with special authority in respect to the management and conduct of the master's business, a general supervision of it, the control and direction of the other servants under his charge, authority to direct them in the performance of their duties, he is, in respect to those absolute duties the master owes such other servants, a vice principal. He stands in the place of the master in the performance of those duties, whether in reference to the selection of safe instrumentalities, a safe place to work, or in giving proper warning of dangers and risks not known to the servant, or which he could not by the exercise of reasonable prudence discover; and his failure and neglect to perform such absolute duties render the master liable.

But the case at bar does not present facts showing that the master owed deceased any absolute duty in respect to the negligence alleged in the complaint, and, even though it be conceded that the superintendent was guilty of negligence in the manner of loading the pulley wheel, defendant is not liable. In respect to that work the superintendent was engaged with other servants in the ordinary work of defendant, loading and unloading heavy machinery, moving it in and out of the factory, and was a fellow servant, and not a vice principal. Corneilson v. Eastern Ry. Co., 50 Minn. 23, 52 N. W. 224; Ling v. St. Paul, M. & M. Ry. Co., 50 Minn. 160, 52 N. W. 378; O'Niel v. Great Northern Ry. Co., 80 Minn. 27, 82 N. W. 1086; McDonald v. Buckley, 109 Fed. 290, 48 C. C. A. 372. And besides the rule requiring the master to exercise a general supervision over the work of his servants does not extend to dangers and risks that are apparent and obvious, or which might be discovered by the servant by the exercise of reasonable

care and prudence, nor to guard and protect the servants from the negligence and carelessness of fellow servants.

But, whether we be correct in this or not, it is clear upon the undisputed facts in the case that plaintiff's intestate assumed whatever risks were incident to setting up the edger at the place he was performing that work. Deceased was a skilled machinist, and for twenty years had worked in this shop. He had set up nearly a hundred edgers, such as he was engaged in putting together at the time of the accident. He had frequently assisted in loading and unloading heavy machinery, and in the manner in which this pulley wheel was being loaded. In short, he was as familiar with the shop and its work as any other person in the employ of defendant. On all other occasions when deceased had set up these edgers he had selected a place near the center of the factory, where he could perform his work with entire safety, and where, by a custom in the shop, they had been uniformly put together. He was not ordered by the superintendent to do the work on this occasion at the place where he attempted to do it. He was simply ordered to set up the machine, and selected this particular place of his own motion. He was aware of the fact, when setting up the edger, that the superintendent and other servants were engaged in loading the pulley wheel onto the wagon, and that they were making use of the crane to assist in that work. He was aware that the place where he was performing the work was attended with more or less danger. The progress of that work necessarily changed the character of the place where he was working and enhanced the liability for accidents to occur. He was bound to take notice of the operations of the other servants, and govern and control himself accordingly. Failing to do that, he must, as a matter of law, be deemed to have assumed, in voluntarily setting about his work at this point, whatever risks and dangers were incident to its performance at that place. Upon this state of facts we are of opinion that the learned trial court properly directed a verdict for defendant. The case is not unlike O'Niel v. Great Northern Ry. Co., supra, where the rules of law applicable to the question when a superintendent or foreman is a vice principal are discussed. See also Ling v. St. Paul, M. & M. Ry. Co., supra.

At the trial defendant offered in evidence certain declarations of deceased to the effect that he alone was responsible for the accident,

and exculpating defendant from the charge of negligence. This evidence was objected to, and its admission is assigned as error. We think the evidence was properly received. While plaintiff's right of action is founded upon the statute, her right of recovery necessarily depends upon the question whether her intestate could recover had he lived; and it is clear that, whatever would have been evidence against him had he lived and brought an action for his injuries, would be admissible in a suit brought by his administratrix. The evidence was admissible "under the rule that 'self-disserving' declarations made by a deceased person having peculiar opportunities to know the truth as to the matter under investigation may be proved even in cases between third parties, none of whom claim under ,or through him." Georgia v. Fitzgerald, 108 Ga. 507, 509, 34 S. E. 316. The evidence was proper as a circumstance in the case for what it was worth.

Order affirmed.