GRACE LAUGHREN v. THOMAS GEORGE LAUGHREN.[1]

April 28, 1939.

No. 31,955.

[1]Reported in 285 N. W. 531.

*Fryberger, Fulton & Boyle,* for relator.

*J. H. Whitely,* for respondent.

PETERSON, JUSTICE.

Compensation was awarded for the death of Ray Laughren, who died on November 24, 1936, from injuries received while hauling logs with truck, either as an independent contractor or as relator's employe. The industrial commission found that the deceased was employed by relator. The principal question here is whether the finding of employment is sustained by the evidence. One other question is raised relative to the exclusion of evidence offered by relator.

The rule that a finding of fact by the industrial commission will not be disturbed unless clearly without support in the evidence has been reiterated so many times that no citation of authority is necessary. The finding will be sustained if the evidence and the inferences permissible therefrom would justify the trier of fact in making the questioned finding. The evidence of employment and the inferences that legitimately might be drawn therefrom permit, but do not require, a finding of employment. For some months prior to his death the deceased, who was relator's son, was employed by his father to drive his truck at $75 per month with board and lodging. The wages were paid semimonthly in payments of $37.50. The father apparently tried to help his son and at times permitted him to have the use of the truck for himself. The arrangement for hauling the logs, by which the son came to his death, was made by the relator. The evidence is not conclusive either way, but is to the effect that one Lind, for whom the logs were hauled, inquired of relator about getting someone to haul logs for him and that relator stated that he had a truck that was not working, that the son did not have much to do at the time, and that the son could go

and do the hauling at a price there proposed by relator of six dollars per thousand feet. The next day the son went from Duluth, where he lived, to a point above Hibbing to haul the logs with relator's truck. Relator gave him $15 and Lind gave him $12, which was charged to relator's account. The son received $37.50, which evidently was one-half month's wages. After he worked a few days the son found that the work could not be profitably done at the six-dollar figure. He then quit work and returned to Duluth. Meanwhile the relator and Lind went from Duluth to the scene of the log hauling and, upon finding that the son had returned to Duluth, did likewise. Then the relator and Lind met at the office of one Opsahl and discussed making new arrangements for hauling the rest of the logs. Relator called his son on the telephone and had him come down to Opsahl's office where he talked to him. Opsahl testified that after the conversation relator and his son came back "and Mr. Laughren [relator] said *he* would finish the job" at eight dollars per thousand. Then the son returned to his work and was killed while hauling the logs under this last arrangement. After the son's death Lind had a settlement with relator and paid him the balance due for the hauling done. Relator denies that the son was employed by him. The widow testified that he was working for his father. The son told one Mix before he started work that he was going to haul logs for Lind at six dollars per thousand and afterwards that he quit hauling the logs at that figure because the work was not profitable. There is other evidence to support the conflicting views of the parties. The general tenor of the evidence which sustains the finding is that relator arranged for and undertook the job of hauling the logs, that he was looking after its performance, that when the son quit work relator made a new arrangement to go on with the work at an increased compensation, and that he made a final settlement with Lind as the party who had the log-hauling contract. The evidence made the employment a fact issue, which was for the commission to decide.

■ Evidence was excluded as hearsay to the effect that the son told Mix, his brother-in-law, that in 1934 he did certain hauling

for one Sweeney at Cloquet with the free use of the relator's truck, that he did the work for himself and received the pay himself. The son's widow had testified that the son did the Sweeney hauling for the relator, who testified in his own behalf that he let the son have the free use of the truck to do this hauling and keep what he earned for himself. Declarations made by a person since deceased as to relevant facts are admissible when it appears that he was personally cognizant of the facts, that they were against pecuniary interest, and that he had no probable motive to state the facts falsely. Statements of an employe as to the cause of the injury resulting in his death tending to exculpate his employer have been received under this rule. Dixon v. Union Ironworks, 90 Minn. 492, 97 N. W. 375. All statements by the deceased relating to the contract in issue, the Lind contract, were received. The statements rejected related to a collateral job and not to the one the performance of which resulted in the son's death. The statement to Mix was made about two years before the Lind job was undertaken. The admissibility of evidence of a collateral fact depends on whether it has a direct, logical tendency to prove or disprove the facts in issue, and the question is not so much a question of law as of sound, practical judgment to be determined with reference to the facts of the particular case. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3252. The ruling of the commission cannot be said to have been erroneous in this view. The decision should be affirmed.

Respondent is allowed $100 attorney's fees in this court.

Writ quashed and order affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.