EDWIN FRANK NOVOTNY v. RAYMOND BOULEY
AND OTHERS.
ANTONIA NOVOTNY v. SAME.[1]

May 23, 1947.

Nos. 34,313, 34,314, 34,315, 34,316, 34,317.

---

[1]Reported in 27 N. W. (2d) 813.

594

*Allen S. Chambers* and *Kelly & Mangan,* for appellants Raymond Bouley, Homer Guimont, Ed Gonyea, Ralph J. Lahn, Joe Hartman, Will Dedrick, and Bouley Rural Telephone Company.

*Durham & Swanson,* for appellant W. R. Stephens Company.

*G. P. Mahoney* and *John S. Morrison,* for appellant W. R. Stephens.

*Grant L. Martin* and *Joseph C. Vesely,* for respondents.

MAGNEY, JUSTICE.

Plaintiff Edwin Frank Novotny, a minor, was employed by defendant W. R. Stephens as a farm hand. On July 20, 1944, while riding on a load of baled straw, he was caught by a telephone wire overhanging the highway, thrown to the ground, and injured. He brought suit to recover for his injuries against his employer, W. R. Stephens, John Novotny, his brother, who was manager of Stephens' farm and who operated the truck on which Edwin was riding, W. R. Stephens Company, the owner of the truck, and Raymond Bouley and his five associates, who were the owners of the Bouley Rural Telephone Company. Edwin's mother, Antonia Novotny, also brought suit against the same defendants to recover for loss of services and medical expenses. Plaintiffs recovered in both actions. John No-

votny made no motion of any kind, and no appearance was made on his behalf. Defendants Bouley and his associates moved for a new trial, which was denied. The court also denied the respective motions of the remaining two defendants, W. R. Stephens and the W. R. Stephens Company, for judgment notwithstanding the verdicts or a new trial. Separate appeals have been taken from the respective orders.

■ W. R. Stephens was the owner and operator of a farm in Dayton township, Hennepin county. John Novotny was his farm manager. Plaintiff Edwin commenced working for Stephens as a farm hand on July 10, 1944. On July 20, 1944, in connection with the farm work, John, Edwin, and another farm hand, Wendell Helsene, loaded a truck, owned by defendant W. R. Stephens Company, with bales of straw. These bales were 3½ feet long, 14 inches high, and 16 inches wide. The truck platform, which was 12 feet long and 7 feet 3 inches wide, accommodated two bales end to end. Two rows of bales ran down its full length. The 14-inch side was up. They were piled five tiers high with a single binding row on top. The bales were not tied. The total height from the ground to the top of the load was 124½ inches—less than 10½ feet. The load was to be taken to a scale some miles away to be weighed. John operated the truck, and Wendell and Edwin rode on the load. As they proceeded, the truck hit a chuckhole and three bales fell off. One broke and the other two were placed on top. John then told Wendell to sit on the fourth tier toward the front and Edwin on the fifth toward the rear to watch so that no more bales would be lost. After they had proceeded another half mile, a telephone wire suspended over the road caught Edwin on the left side of his neck under the chin and threw him off the load. He was seriously injured. The speed of the truck at the time was variously estimated at between 15 and 30 miles an hour, Edwin stating that it was going 20 miles an hour. He had been over this road only once before and then after dark, and knew nothing about the presence of the telephone wire over the road.

As stated, a verdict was returned against all the defendants. All except John Novotny claim reversible error. Necessarily, we must discuss the claims of each defendant separately, and in so doing we shall consider first the errors claimed by the W. R. Stephens Company. This defendant owned the truck upon which Edwin was riding at the time of the accident. It had been used on the farm for some time prior to the accident with the permission of the owner. The Minnesota safety responsibility act, Minn. St. 1945, § 170.54,[2] provides:

"Whenever any motor vehicle, * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

John Novotny operated the truck at the time in question with the express consent of the owner. Under the statute just quoted, John is deemed the agent of the owner of the truck at the time in question in the operation thereof. The duty of John, as operator of the truck and as agent of the Stephens company, toward Edwin, a rider on the truck, was materially different from the duty of John, as manager of the farm of W. R. Stephens, toward Edwin, an employe on the farm. In the latter situation, depending upon the nature of the work that was being performed at the time of an injury, John might be a vice principal of W. R. Stephens or a fellow servant of Edwin.

The court, however, charged the jury:

"* * * if you find that there was any negligence on the part of John Novotny, that is imputable to both W. R. Stephens and W. R. Stephens Company, so his negligence would be the negligence of all three. Do I make that clear? Just so you don't regard that independently in determining negligence or liability here."

Without pointing out the essential differences in the rules governing the two relationships, it is obvious that the court committed

[2]See, M. S. A. § 170.54, and cf. Mason St. 1946 Supp. § 2720-122(34).

a fatal error. The duties of W. R. Stephens and the Stephens company toward Edwin were not the same.

■ The court also gave the following instruction:

"No person shall drive or move on any highway any vehicle unless such vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping therefrom, and a violation of this requirement is prima facie evidence of negligence."

This instruction obviously refers to the way the bales of straw were placed untied on the truck. It is apparent from a reading of the recital of the facts that the manner in which the bales were placed on the truck had nothing to do with the accident, and therefore that it was not a proximate cause thereof. In our opinion, the court erred in giving this instruction.

■ The court also gave the following instruction:

"No vehicle unladen or with a load shall exceed a height of 12 feet 6 inches. This is Section 2720, Subdivision 272, Mason's Minnesota Statutes [Minn. St. 1945, § 169.81]. Also, any violation of this provision would be prima facie evidence of negligence."

There is no evidence in the case that the load of baled straw exceeded a height of 12 feet 6 inches. From the testimony in behalf of plaintiffs, the height of the load was less than 10½ feet. The jury was thus permitted to speculate on a claim of negligence as to which there was no testimony in the case. This was error.

Other claims of error are made by the Stephens company, but enough of them have been considered to make it obvious that this defendant is at least entitled to a new trial.

■ The Stephens company claims also that there is no evidence in the case sufficient to make the claimed negligence on its part a question for the jury. Under the statute above quoted, John was its agent. As its agent, it was his duty to use reasonable care in operating the truck. The evidence does not indicate that he operated the truck at an excessive rate of speed. The maximum rate testified to was 30 miles an hour, while Edwin himself testified that the truck

was proceeding at about 20 miles an hour. There is nothing in the record to show that such speed as testified to was excessive under the circumstances, nor did it exceed the statutory limits. As we view it, the only claim of negligence which plaintiffs make against the Stephens company because of any failure on the part of its agent, which raises a question for the jury, is whether John failed to use reasonable care in keeping a proper lookout ahead. John testified that he knew the telephone wire was there and that it could be seen from a distance of 250 to 300 feet, but that at the time of the accident he did not see it, as he was focusing his attention on the road. Whether or not in the exercise of due care he should have seen it and thus avoided the accident was a question for the jury, and we so hold. The showing of negligence on this feature must be considered weak.

■ W. R. Stephens insists that the verdict as against him is supported by neither the law nor the evidence and that the court erred in several respects. John Novotny was the manager or superintendent of Stephens' farm operations. In the performance of some of his duties he would be a vice principal; as to others, he would be a fellow servant of plaintiff. Stephens insists that under the facts surrounding this accident, if there was any negligence on the part of John, it was the negligence of a fellow servant only and that no liability would attach to Stephens. If we determine that the relationship between Edwin and John in connection with what John did or failed to do at the time of the accident was that of fellow servant, there is no object in further discussing instructions to the jury which, in our opinion, are so erroneous as to necessitate in any case the granting of a new trial. We have already considered some of them in connection with the claims of the Stephens company.

One of the nondelegable absolute duties of the master is to furnish a safe place to work. Plaintiffs contend that the bales of straw were so placed on the truck without being tied that the top of the load became an unsafe place to work. Since the accident happened because of a low-hanging wire over the road, the load and the untied condition of the bales cannot be considered to be a proximate cause

of the accident. Nor can Stephens be charged with failure to furnish Edwin a safe place to work because of the condition of the highway itself, unsafe because of the low-hanging wire only, for which condition he can in no way be held responsible.

If there was any negligence on the part of John in the operation of the truck, such as failure to keep a proper lookout ahead, that would be the negligence of a fellow servant and not chargeable to the master as a breach of a nondelegable duty of the master. John was driving the truck on which Edwin was riding. Assume that the evidence warrants a claim that John was negligent in failing to use due care in keeping a proper lookout ahead. That, under the situation here, would not be a breach of a nondelegable duty which the master owes a servant, but the negligence of a fellow servant. In the operation of the truck, John was then performing no more than the work of another servant, and a fellow servant of plaintiff. Negligent acts of a fellow servant are not imputable to the master. 4 Dunnell, Dig. § 5945.

In Dixon v. Union Ironworks, 90 Minn. 492, 97 N. W. 375, the foreman was overseeing the work of loading a pulley wheel onto a wagon. He was in full charge of the work. One part of the wheel had been placed upon the wagon, and the foreman and other servants were engaged with a crane in lifting the other part. As the crane lifted the wheel from the ground, it tilted, resulting in injury to a servant. The court expressed the fellow-servant rule as follows (90 Minn. 495, 97 N. W. 376):

"It is true that the superintendent had general charge and supervision of defendant's business and this particular work, but from this it does not follow that he was a vice principal. A superintendent or foreman is not necessarily a vice principal simply because he occupies that position. Title or rank has not of itself any special significance in this connection. When engaged with the other servants in the common employment of the master, the superintendent or foreman is a fellow servant, and for his personal negligence the master is not responsible; but when clothed with special authority in respect to the management and conduct of the master's business, a general

supervision of it, the control and direction of the other servants under his charge, authority to direct them in the performance of their duties, he is, in respect to those absolute duties the master owes such other servants, a vice principal. He stands in the place of the master in the performance of those duties, whether in reference to the selection of safe instrumentalities, a safe place to work, or in giving proper warning of dangers and risks not known to the servant, or which he could not by the exercise of reasonable prudence discover; and his failure and neglect to perform such absolute duties render the master liable.

"But the case at bar does not present facts showing that the master owed deceased any absolute duty in respect to the negligence alleged in the complaint, and, even though it be conceded that the superintendent was guilty of negligence in the manner of loading the pulley wheel, defendant is not liable. In respect to that work the superintendent was engaged with other servants in the ordinary work of defendant, loading and unloading heavy machinery, moving it in and out of the factory, and was a fellow servant, and not a vice principal." (Citing cases.)

In Walson v. McGregor, 120 Minn. 233, 139 N. W. 353, plaintiff, a brakeman on a train consisting of dump cars hauled by a "dinkey" engine used in construction work, was injured by derailment of the train. One of the charges of negligence was that the engineer operated the train at an excessive rate of speed, thus causing the accident. The engineer had sole charge of the engine. There was no conductor. Plaintiff was the only other employe connected with the operation of the engine and cars. The accident happened in the state of Washington. The court said (120 Minn. 235, 139 N. W. 354):

"If defendants are correct in their contention that under the common or decision law of Washington plaintiff and the engineer were fellow servants, the trial court erred in submitting this ground of liability [speed] to the jury, as it is clear that under our decisions declaring the law on the subject plaintiff and the engineer were fellow servants. If, however, the accident occurring in Washington,

the law of that state would sustain a recovery by plaintiff for the negligence of the engineer, it was not error to submit this issue to the jury."

In our opinion, Edwin and John, as to the charges of negligence against John in the operation of the truck, were fellow servants, and W. R. Stephens would not be liable for the consequences of John's negligence, if any, in that situation.

■ The telephone line was owned by six individuals, who, as an unincorporated association, operated a 13-subscriber rural telephone system under the name of Bouley Rural Telephone Company. The testimony is undisputed that Edwin was caught at the neck by a telephone wire owned by the company and received serious injuries.

Minn. St. 1945, § 222.37,[3] authorizes telephone companies to use public roads for the purpose of constructing and maintaining lines and provides:

"* * * but such lines shall be so located as in no way to interfere with the safety and convenience of ordinary travel along or over the same; * * *."

The telephone company contends that there is no evidence of negligence sufficient to support a verdict against it. No error affecting it is claimed in the court's charge or in any other respect, and our inquiry therefore must be limited to a consideration of the sufficiency of the evidence.

The case of Wolter v. Armstrong Tel. Exch. Co. 152 Minn. 492, 189 N. W. 431, is quite similar on its facts to the instant case. There, a telephone wire was strung obliquely across the road. Plaintiff was driving horses along the road, sitting on a triple-box farm wagon. The wire caught the seat and threw plaintiff off. The court held that the inference of negligence arising from the facts was not conclusively rebutted and that the question was for the jury. The court said (152 Minn. 493, 189 N. W. 431):

"Defendant in effect concedes that the doctrine of res ipsa loquitur applies under the facts of this case, but contends that the inference

---

[3]See, M. S. A. § 222.37, and cf. Mason St. 1927, § 7536.

of negligence arising from the sagging of the wire has been completely rebutted and that no evidence in support of the presumption of negligence was presented by plaintiff. We are unable to sustain the contention that the inference of negligence was conclusively rebutted. This contention is based on the fact that the testimony of the driver of the wagon the evening before [that he had passed under it without coming in contact with the wire], the testimony of the driver of a threshing machine which passed under the wire the evening before, and the testimony of defendant's lineman who observed the wire the day before, show that as late as the evening preceding the accident the wire was in the same position in which it had been for many months.

" 'Where the thing causing the accident is shown to be in the possession and under the control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use due care, it affords reasonable evidence in the absence of explanation by the defendant, that the accident arose from want of such care.' Dunnell, Minn. Dig. and Supps. § 7044, and cases there cited."

Continuing, the court there said:

"What caused the wire to sag in this instance is not explained in any manner. The inference from the sagging of the wire, in the absence of evidence tending to show some other cause for it, is that the supports or fastenings which held the wire in position were defective and gave way sufficiently to lower the wire to the position which it occupied at the time of the accident. We think the evidence made a question for the jury."

In the instant case, the court in effect charged the jury that the *res ipsa loquitur* doctrine applied. No error based on this instruction is assigned by the telephone company, and the instruction became the law of the case.

Witnesses for the telephone company testified that the telephone wire in question was strung over the road on April 15, 1944, when a telephone was installed in a farmhouse. At that time, the main-

tenance man testified that a 2 x 5 scantling was nailed to the top of an old telephone pole, making the distance from the base to the top 16 feet; and that the wire was attached to a tree across the highway, the same distance above the highway. He stated that the wire was inspected two or three times a week, with no set schedule, and that a day or so before the accident the wire was tight, although he admits that the last time he saw the wire before the accident was the Saturday before, and the accident took place on Thursday. John Novotny testified positively that before the accident the scantling was not on top of the telephone pole, and that marks on the tree across the road showed that the wire had been raised $1\frac{1}{2}$ to 2 feet. He said that at the time of the accident the wire sagged to about 10 feet above the road, and that in the evening, when he returned to the place of the accident, it was $14\frac{1}{2}$ feet above the road.

We are of the opinion that the verdict of the jury against the telephone company is supported by the evidence.

Although one of the other defendants claims that the verdict is excessive and appears to have been rendered under the influence of passion and prejudice, no such claim is made by the telephone company.

Order affirmed as to defendant telephone company; orders reversed with direction to enter judgment for defendant W. R. Stephens; orders reversed as to defendant W. R. Stephens Company and new trial granted.