MARIANA ACOSTA, Plaintiff, Appellee and Appellant, v. BIENVENIDO CRESPO, ET AL., Defendants, Appellants and Appellees. VICTORIA ARROYO ROBLES, Individually and on behalf, etc., Plaintiff, Appellee and Appellant v. THE SAME, Defendants, Appellants and Appellees. GLORIA QUIÑONES, Plaintiff, Appellee and Appellant, v. THE SAME, Defendants, Appellants and Appellees.

No. 9957. Argued June 1, 1949.—Decided July 8, 1949.

*Wilson P. Colberg* for defendants, appellants, and appellees.
*Bolívar Pagán* for plaintiffs, appellees, and appellants.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendants have appealed from three judgments in favor of the plaintiffs in suits for damages. The cases arose out of the same accident and were tried together. The appeals were consolidated and will be disposed of in a single opinion.

Efraín Rodríguez Quiñones, Adolfo Quiñones and Pedro Luís Rodríguez Acosta were killed while riding in a *público*, P–1825, driven by Félix Pagán Molina, a chauffeur employed by Bienvenido Crespo Torres. The heirs of the decedents filed three separate suits for damages against Crespo and Hartford Accident and Indemnity Co. containing substantially the same allegations. The complaints alleged and the answers admitted that the three decedents were riding with Pagán in the *público*, which belonged to Crespo; that Pagán was employed by Crespo as a chauffeur; and that the automobile hit a tree, destroying the car and killing the decedents. However, the answers denied the allegation that the decedents were traveling in the guagua as passengers for pay.

The complaints also alleged in the fourth paragraph that the accident "was due to the fact that the said chauffeur was driving the said guagua at a high speed in excess of 60 miles an hour, the said chauffeur being drunk and the chauffeur then and there drove around a curve in the road without reducing the said speed, and drove the said guagua in a careless and grossly imprudent manner, so that the said chauffeur lost control of the vehicle, which struck a tree situated on the left bank of the said road."

The answers admitted the facts alleged in the fourth paragraph. And as special defenses, the defendants alleged (1) that the decedents were contributorily negligent, and (2) that they and the chauffeur were engaged in a joint adventure, making the negligence of the chauffeur imputable to them.

The insurance company set up as private and special defenses that the accident was not covered by the policy because (1) it provided coverage only when the *público* was being used to transport passengers for pay and because (2) it provided that it did not cover accidents which occurred while the driver was intoxicated.

The plaintiffs filed amended complaints. The only change was the elimination of the phrase "the said chauffeur being drunk" from the fourth paragraph of the complaints. The defendants thereupon filed motions praying that their answers to the original complaints be considered as answers to the amended complaints.

Before discussing the errors assigned, we shall summarize the testimony. Gonzalo López Pérez, the first witness for the plaintiffs, testified that he was an itinerant peddler and had lived in Lares all his life; that on the afternoon of October 22, 1946 he was at kilometer 31 on road No. 8, from Lares to San Sebastián, when he entered a house to sell jewelry; that he met Cándido Rosa in the house; that they both got out on the road and started to walk to Lares; that he saw a *pisa y corre* driven by Pagán coming from San Sebastián toward Lares and he ordered it to stop; that when he asked Pagán where he was going, the latter replied, to Lares; *that he asked Pagán how much he was charging, and he answered, five cents, the same as these three here are paying;* that he gave him five cents for each of them and got in the guagua at kilometer 31; that Pedro Luis Rodríguez Acosta, Efraín Rodríguez Quiñones and Adolfo Quiñones, whom he had known all his life, were in the guagua with

the chauffeur when he got in it; that he rode quite a little and noticed no signs of a celebration; that they were all acting normally; that he noticed the chauffeur was going quite fast, and he told him that he was not in a hurry and to reduce his speed; that Pagán answered they were in a hurry and if he did not like it to dismount; that he and Rosa· dismounted because it was threatening his life and continued on foot; that they had been walking about twenty minutes when they reached the place where the guagua had hit a tree at kilometer 33 or 34.

He testified on cross-examination that he has always paid the five cents on mounting a car; that in the cars which come for Arecibo and Aguadilla you pay when dismounting, and to Camuy on entering; that he did not claim the five cents when dismounting because he was not going to have a discussion over five cents; that he was the only one who protested at the high speed of the car; that· he could not travel at such a speed because he suffers from the head and the heart.

Cándido Rosa, who testified that he had lived in Lares four and a half years, corroborated the testimony of López. The remainder of the proof offered by the plaintiffs concerned the amount of damages.

The first witness for the defendants was Francisco Silvestrini, who testified that he owns a *cafetín* in Lares, and that between 8:30 to 9 a.m. Pagán and his companions, except for Pedro Luis Rodríguez, drank six large beers in his establishment; that they returned about five in the afternoon with Pedro Luis Rodríguez and each had a shot of rum apiece; he noticed that "they were not normal, they were a little happy, a little high. They were not dead drunk."

Jorge Cuevas Ríos testified that he owns a restaurant in Lares; that at 12:30 p.m. these four, except for Pedro Luis Rodríguez, came into his establishment to have lunch; that he noticed they had been drinking and were a little happy,

but were not drunk; that after eating, the three of them left in a *pisa y corre* with Pagán driving.

Elihu Quiñones González testified that he was a first cousin of Efraín Rodríguez Quiñones; that he encountered the four of them, driving in Pagán's guagua at 1:30 in the afternoon of the day of the accident, on the road to Piletas; that they were the only ones in the guagua; that his cousin called him and invited him to "celebrate" with them; that when he refused, the chauffeur told him he was not a man and they left; that he saw four bottles of beer on the floor of the car and one that his cousin was carrying; that the four of them were happy and celebrating; that he could not go with them because he was busy; that that morning he had given his cousin, a veteran, a check of $40, which he had received for him as his bi-monthly unemployment compensation of $20 a week; that he had seen Efraín Rodríguez drinking beer in the car, but none of the others; that they invited him to have a beer, but he did not take it; that he had seen Pagán drinking liquor on many other occasions.

Manuel Pascual Báez testified that he saw the four of them driving toward San Sebastián about 4:30 p.m.; that he saw them later on their return trip; that they were coming quite fast; that he calculated in his own mind that something was going to happen, and at the same moment he felt the impact with the tree and ran to the scene; that he found a bottle in the guagua with a little liquor in it; that he carried Efraín Rodríguez, who stank of liquor, from the scene of the accident.

Dr. Felipe J. Achecar testified that when he arrived at the hospital at 6 p.m., one boy was dead, another was in a comatose condition, and the third had a fractured spine; the boy who was in a comatose state smelled of liquor; "It seems that he had done some drinking. Not much, but liquor is evident if a little or a great deal is drunk"; he examined the others to see if they had drunk anything, and they had; they were not drunk.

-Eladio Pérez Sánchez, a Lance Corporal of the insular police stationed at Lares, testified that when he arrived at the hospital after the accident he questioned Pedro Luis Rodríguez, who told him that he was at the plaza in Lares when the other three came by in Pagán's guagua; that he got in with them, and they drove to San Sebastián; that they stopped at a house to take a drink of anise, and then started to return to Lares.

At this point, although counsel for the plaintiffs had not objected to the testimony, the district court raised the issue of the admissibility of this testimony. Counsel for the defendants contended that it was admissible as a declaration against interest.

The lower court struck this testimony and excluded any further testimony as to statements made by Rodríguez on two grounds: (1) it was not really a declaration against interest; (2) in any event, he was so badly hurt that he did not know what he was saying. In addition, the lower court pointed out that "the testimony is not only against him, assuming it were against his interest, but it also applies to the other two cases."

Counsel for the defendants then offered to prove with the testimony of the doctor that Rodríguez made his statements spontaneously in front of the doctor. The lower court permitted counsel for the defendants to submit for the record sworn statements of Pérez Sánchez and Santos Toro Vargas, another policeman. These sworn statements were placed in the record as a tender of proof of what the witnesses would say if permitted to testify. The court then refused to permit them to testify to that effect.

The tender shows that the policemen would have testified that Pedro Luis Rodríguez stated to them that he was in the plaza in Lares at 5 p.m. on October 22, 1946, when Pagán arrived there in his guagua, accompanied by Adolfo Quiñones and Efraín Rodríguez Quiñones; that they invited him

"to celebrate and to sing some songs"; that he agreed and got in; that with Pagán driving, they went to the house of Ramón Estrella in the Juncal Ward of San Sebastián, where he drank anise and all the others, including the chauffeur, drank rum and anise; that on the way back to Lares, Pagán was driving at a high speed; that in driving around a curve, he went over a hole and lost control of the car, which left the road and hit a tree.

Félix Pagán Molina testified that at about eight or nine o'clock he met two of his friends, Adolfo Quiñones and Efraín Rodríguez Quiñones; that "they went places drinking beer"; that they were traveling in a *pisa y corre* belonging to Crespo for whom he worked; that he went to San Sebastián to see if he could obtain a brake drum for the guagua; that they were drinking and celebrating the divorce Efraín Rodríguez was going to get; that from San Sebastián to Lares they were drinking; that they stopped at a house to drink anise; that he did not pick up any passengers on that route as he was not carrying passengers that day.

On rebuttal, Bolívar Pagán, counsel for the plaintiffs, testified that he prepared both the original and the amended complaints; that by a personal error he included the allegation in the original complaint as to the drunkenness of the chauffeur; and that he had no information whatsoever that the chauffeur was drunk when he made that allegation.

██ The first assignment is that the lower court erred in holding that at the time of the accident the chauffeur was acting in the course of his employment.

The defendants admitted in their answer that the *público* belonged to Crespo and that Pagán was employed by him as a chauffeur. The presumption therefore is that at the time of the accident the chauffeur was acting within the scope of his employment. *Morales* v. *Delia Mejías, Inc.*, 63 P.R.R. 672. But this presumption could be controverted by testimony. *Graniela* v. *Yolande, Inc.*, 65 P.R.R. 100, 104.

■ The owner of an automobile is not liable for injuries caused by the negligence of a chauffeur employed by him if it is established by the testimony that while driving the car the chauffeur deviated from his work to accomplish some purpose of his own not connected with his employment. *Ojea* v. *Drug Co. of Porto Rico*, 40 P.R.R. 626; *Burgos* v. *Sobrinos de Villamil*, 41 P.R.R. 85; *Ramírez* v. *Marín*, 42 P.R.R. 824; *Graniela* v. *Yolande, supra; Annotation*, 122 A.L.R. 858; *Maas* v. *Harvey*, 8 S.(2) 683 (La., 1942); *Barret* v. *Employers Liability Assur. Corporation*, 118 F.(2) 799 (C.C.A. 5, 1941); *R. L. Jeffries Truck Line* v. *Brown*, 197 S.W.(2) 904 (Ky., 1946); *Baker Driveaway Co.* v. *Clark*, 162 F.(2) 181 (C.C.A. 4, 1947); I Restatement, Agency §§ 235, 238; 5 Blashfield, Cyclopedia of Automobile Law and Practice, Permanent ed., § 3011, p. 139. Cf. *Maysonet* v. *Heirs of Arcelay, ante*, p. 155.

■ There was ample testimony offered by the defendants that the chauffeur was not carrying passengers for hire and was not on an errand for his employer, but rather, accompanied by three friends, was on "a frolic of his own". *Riley* v. *Standard Oil Co.*, 132 N.E. 97, (N.Y., 1921). If the lower court had believed this testimony, neither the insurance company nor the employer would be liable. Cases cited in preceding paragraph; *Arvelo* v. *Rodríguez*, 69 P.R.R. 936.

■ Moreover, even if the lower court had believed the chauffeur as to the nature of the trip, the defendants would not be liable. Pagán testified that the other three were not passengers for hire, as he was not transporting passengers that date. But he also testified that the others accompanied him on the trip which he was making to San Sebastián to obtain a brake drum for the guagua. If a pedestrian had been hit by the car while the chauffeur was driving it on such an errand, he could recover damages. But if the chauffeur takes along as his own guest someone whom he does not need to assist him to accomplish his errand, the owner is

not liable for injuries to the guest caused by the chauffeur's negligence in operating the car. 5 Blashfield, *supra*, § 3016, p. 148.

However, in its findings of fact the district court stated that "It was not proved to the satisfaction of the court that the vehicle was engaged in traffic completely foreign to the regular course of the business; there was evidence that during the trip and before the accident, passengers took and left the guagua." We take this somewhat cryptic statement to mean that the lower court did not believe the testimony of the defendants that the chauffeur and his friends were engaged in a frolic of their own when the accident occurred. Instead, the district court apparently chose to believe the somewhat dubious story of López Pérez and Rosa that they inquired and paid their fare in advance. We must confess that in the light of the circumstances, including the testimony of the chauffeur himself and a number of disinterested witnesses, this story seems to bear the earmarks of having been contrived to meet the special defenses.

Nevertheless, we are reluctant as always to reverse a judgment on the theory that the lower court erred in weighing the evidence. James, Functions of Judge and Jury in Negligence Cases, 58 Yale L.J. 667. We hold in discussing a subsequent error that a new trial must be granted. We therefore think it is more desirable that a new trial be held rather than for us to pass on this error.

The second assignment is that the lower court erred in holding that the predecessors of the plaintiffs were not contributorily negligent. The theory here is that even if the three decedents were passengers, they were guilty of contributory negligence in riding with Pagán when they knew he was drunk.

A plaintiff who accompanies a chauffeur is guilty of contributory negligence and cannot recover if he is injured under

the following circumstances: (1) the driver was intoxicated or under the influence of liquor to such an extent as to make him a careless or incompetent driver; (2) the plaintiff knew or should have known the driver's condition; (3) the drunkenness was a contributory factor in bringing about the accident. *Lewis* v. *Chitwood Motor Co.*, 115 S.W.(2) 1072 (Ark., 1938); *Taylor* v. *Taug*, 136 P.(2) 176 (Wash., 1943); *Mercier* v. *Fidelity & Casualty Co. of New York*, 10 S.(2) 262 (La., 1942); *Hicks* v. *Herbert*, 113 S.W.(2) 1197 (Tenn., 1938); *Sparks* v. *Chitwood Motor Co.*, 94 S.W.(2) 359 (Ark., 1936); Annotation, 65 A.L.R. 952; II Torts, Restatement, § 466, Comment *e*, p. 1233; 4 Blashfield, *supra*, § 2453, pp. 602–9; Prosser on Torts, p. 418; 38 Mich.L.Rev. 556.

Here again the difficulty is that the lower court found the facts against the defendants. In its findings of fact it stated that "The fact that the chauffeur took liquor with others who invited him is not material in order to conclude that the chauffeur was dedicating the guagua exclusively to this festive condition." It went on to say that there was no contributory negligence by the decedents; that the accident was due to the excessive speed at which the chauffeur was driving; and that "The testimony on this question did not leave the court convinced that the chauffeur was drunk, or that this was the cause of the accident."

Once more, we prefer to grant a new trial for reasons to be noted rather than to determine if the lower court committed manifest error in weighing the evidence on this point. We therefore leave for the lower court on retrial the contentions of both defendants that (1) the cause of the accident was the impairment of the faculties of the chauffeur through drinking, and that (2) the decedents knew or should have known his condition and were contributorily negligent in driving with him despite this knowledge. For the same reason, we need not inquire if the insurance company was entitled to rely in this case on the clause in the policy that it

did not provide coverage for accidents occurring while the driver was intoxicated.[1]

We likewise find it unnecessary to pass on the contention the defendants make herein that the four occupants of the car were engaged in a joint adventure and therefore that the successors in interest of three members of the group are precluded from filing suits predicated on the negligence of the fourth member of the group, Félix Pagán. Cf. II Torts, Restatement, § 491; Annotation, 95 A.L.R. 857; Notes, 80 U.Pa.L.Rev. 1123, 1127; 12 N.C.L.Rev. 385, as reprinted in 2 Harper, Readings on Torts, pp. 862–67; Mechem, The Contributory Negligence of Automobile Passengers, 78 U.Pa.L.Rev. 736, 747; 78 U.Pa.L.Rev. 270; 38 Yale L.J. 810; 85 U.Pa.L.Rev. 644; Prosser on Torts, p. 491. And compare, Note, 163 A.L.R. 706; Prosser on Torts, p. 416 *et seq.*

The third assignment furnishes the basis for our decision in this case. Here the defendants contend that the lower court erred in excluding the testimony of the policemen as to the declaration of Pedro Luis Rodríguez. Their theory is that it was admissible as a declaration against interest.

Section 35, par. 4 of our Law of Evidence, § 397, par. 4 of the Code of Civil Procedure, 1933 ed., copied from Cali-

---

[1] In discussing this point, the defendants point out that the original complaint affirmatively alleged that the chauffeur was drunk while he was driving. They contend that the amended complaint was filed to eliminate this allegation after counsel for the plaintiffs had received their answer containing their special defenses and realized the effect of his original allegation that the chauffeur was driving while drunk.

The plaintiffs were entitled to amend their complaints, and are not bound by the allegations of the original complaint. But the testimony on rebuttal by counsel for the plaintiffs raises the question of whether he has violated Rule 11 of the Rules of Civil Procedure. Rule 11 provides "For a wilful violation of this rule an attorney may be subjected to disciplinary action." As this is the first time we have had occasion to refer to Rule 11 and in view of all the circumstances, we shall take no action in this case. But we make it clear that attorneys wilfully violating Rule 11 in the future will be subject to appropriate disciplinary action.

fornia, makes admissible "the act or declaration of a deceased person done or made against his interest in respect to his property." California now has an additional provision specifically making admissible a declaration against *pecuniary* interest of a decedent against his successor in interest. McBaine, California Evidence Manual, §§ 249–51, pp. 352–56; V Wigmore on Evidence, § 1455, p. 260, footnote 1. But in passing upon the admissibility of declarations against interest, the courts have seldom distinguished between pecuniary and property interest. For example, "A declaration against proprietary interest is frequently called by the courts a declaration against pecuniary interest." Jefferson, Declaration Against Interest: an Exception to the Hearsay Rule, 58 Harv.L.Rev. 1, 35. It is true that in some of our earlier cases only proprietary interests were involved. *Hernández* v. *Fernández*, 17 P.R.R. 103; *Aponte et al.* v. *Garzot et al.*, 28 P.R.R. 586; *Santiago et al.* v. *Santiago et al.*, 28 P.R.R. 903, 909; *Sosa* v. *Sosa*, 42 P.R.R. 851, reversed on other grounds in 68 F.(2) 338 (C.C.A. 1, 1933). But in later cases we apparently assumed that a declaration against interest would be admissible, provided it complied with all the other requirements therefor, in workmen's compensation cases, which involve pecuniary rather than proprietary interests. *Montaner* v. *Industrial Commission*, 54 P.R.R. 741; *Tomás* v. *Industrial Commission*, 59 P.R.R. 852; *Ruiz* v. *Industrial Commission*, 60 P.R.R. 223, 229. In the same way, under a liberal reading of par. 4, the latter can be fairly construed to cover declarations against the pecuniary interest involved in a claim as here for damages.

Generally speaking, the requirements for admission of a declaration against interest are: (1) the declarant must be dead; (2) the declaration must be against the pecuniary or proprietary interest of the declarant at the time of the declaration; (3) the declaration must consist of facts cognizable by the declarant personally; (4) the declarant must not

have had a probable motive to falsify the facts declared; (5) the declarant realized or as a reasonable man should have realized that the declaration was against his interest. Jefferson, *supra*, pp. 1, 17–18, 32, 34–35; V Wigmore, *supra*, §§ 1456–75, pp. 260–80; Morgan, Declarations Against Interest in Texas, 10 Tex.L.Rev. 399; *Aetna Life Ins. Co. v. Strauch*, 67 P.(2) 452 (Okla., 1937); *Windorski v. Doyle*, 18 N.W.(2) 142 (Minn., 1945); *Halvorsen v. Moon & Kerr Lumber Co.*, 91 N.W. 28 (Minn., 1902). Cf. Rules 509, 503, A.L.I., Model Code of Evidence; Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 195.

When the foregoing requirements have been met, defendants have been permitted to offer the declaration of the victim where as here his heirs or his successors in interest filed suits for wrongful death. Jefferson, *supra*, pp. 34–35; *Rudisill v. Cordes*, 5 A.(2) 217 (Pa., 1939); *Alverson v. Little Cahaba Coal Co.*, 77 So. 547 (Ala., 1917); *Murdock v. Adamson*, 77 S.E. 181 (Ga., 1913); *Dixon v. Union Ironworks*, 97 N.W. 375 (Minn., 1903); *Walker v. Brantner*, 52 Pac. 80 (Kans., 1898).

In seeking to determine in this case if the declaration of Pedro Luis Rodríguez fulfilled the five requirements, we need only discuss the second and the fifth. As to the second, some courts, including this Court, have made the same error as the lower court. As we have seen, one of the grounds on which the lower court excluded the declaration of Rodríguez was that it was being offered not only against his successor in interest but also against the plaintiffs in the other two cases, who were unrelated to Rodríguez. But the question of privity has no bearing on admissibility of declarations against interest, although it does play a role in admissions. Rather the test is whether the declaration was against the interest of the *declarant himself* at the time he made it. Once that is established, the declaration is admissible pro-

vided it is relevant, without reference to the relationship, if any, between the declarant and the party to the suit against whom it is offered.

Jefferson, *supra*, explains this point as follows (p. 63): "Much confusion exists in the cases with respect to the hearsay exceptions of personal admissions, vicarious admissions and declarations against interest. These are three distinct exceptions to the hearsay rule, the principles of which should be kept separate. The failure of courts to appreciate the difference between these three exceptions has led to the development of inaccurate terminology and confusing results. The basis of the exception for declarations against interest comes from the disserving quality of the declaration or the facts declared which gives the declarations some element of trustworthiness and compensates to some extent for the absence of the oath and opportunity for cross-examination. *It follows that a declaration against interest is admissible whenever relevant, no matter what the relationship is between the declarant and the party against whom it is offered.*" (Italics ours). To the same effect, Morgan, *supra*, 10 Tex.L.Rev. at pp. 406–8; V Wigmore, *supra*, §§ 1459, 1474–5, pp. 265, 279–80; Muñoz Amato, The Hearsay Rule and its Exceptions in the Law of Puerto Rico, 32 Calif.L.Rev. 31, 55–56 (English version), XIII *Rev.Jur. de la U. P. R.* 13, 81, 82 (Spanish version). See also, Morgan, Admissions as an Exception to the Hearsay Rule, 30 Yale L.J. 355; Morgan, The Rationale of Vicarious Admissions, 42 Harv.L.Rev. 461.

■ Since no privity is necessary to make a true declaration against interest admissible, Jefferson, *supra*, properly criticizes at p. 67 the cases where admissibility of a declaration against interest is made to depend upon whether the cause of action is given by way of survival or as an independent cause of action. We agree with his view that if the declarant as here had an apparent claim for his injuries at the time of his declaration, the latter (p. 67) is "admissible

against any party wherever relevant, although the cause of action [after his death] vested in the next of kin is an independent claim." The better reasoned cases therefore admit such declarations against persons not related to the declarant by the bonds of privity. *Pennsylvania R. Co.* v. *Rochinski*, 158 F.(2) 325 (C.C.A., D.C., 1946), commented on in 15 Geo.Wash.L.Rev. 486; *Weber* v. *Chicago, R.I. & P.Ry Co.*, 151 N.W. 852 (Iowa, 1915); *Georgia Railroad & Banking Co.* v. *Fitzgerald*, 34 S.E. 316 (Ga., 1899); *Dixon* v. *Union Ironworks, supra; Walker* v. *Brantner, supra.*

In view of the foregoing, we erred in *Montaner* v. *Industrial Commission, supra*, and *Tomás* v. *Industrial Commission, supra*, to the extent that those cases required a showing of privity between the declarant and the party against whom the declaration was being offered as a prerequisite for admissibility of a declaration against interest. Muñoz Amato, *supra*, pp. 55–56.

Turning to the fifth requirement, the problem is whether Pedro Luis Rodríguez was aware at the time he made his declaration that he might have a cause of action which would be defeated by his declaration. In most cases that is not a troublesome question because the declaration usually consists of a simple statement that the declarant was to blame for the accident. But here the problem is more difficult. We can scarcely impute to him as a reasonable man the knowledge that he was furnishing support for the special defense of the insurance company when he stated in effect that he was not a passenger for hire. To say he was aware that his statement would establish this defense would be to assert that he knew what this Court has encountered so much difficulty in deciding. See *Arvelo* v. *Rodríguez, supra*. We are unable to reach such an unrealistic result.

On the other hand, his declaration in effect that they had all been drinking together is closer to the facts of the cases admitting such statements. We think the ordinary person

knows or should know that he will not recover if he drives with an intoxicated driver, known by him to be intoxicated. See *Windorski* v. *Doyle, supra,* p. 147. This portion of the declaration of Rodríguez was therefore admissible as a declaration against interest. And once that part of the statement is admitted, it carries with it all the essential parts thereof: the declaration that they were on a drinking party together is necessarily inseparable from the declaration that they were not passengers of hire. The entire statement was therefore admissible as an integrated whole. *Aetna Life Ins. Co.* v. *Strauch, supra,* p. 455; V Wigmore, *supra,* § 1465, pp. 271–72.

The plaintiffs argue that in any event the declaration of Rodríguez was inadmissible because he was on the point of death and therefore incapable of giving a rational statement at the time of the declaration. Cf. § 39, par. 1 of the Law of Evidence, § 401, par. 1, Code of Civil Procedure, 1933 ed. But the testimony did not disclose that Rodríguez was wholly irrational at that time. On the contrary, the presumption is that he was rational; moreover, the defendants offered to prove by the doctor that this statement was spontaneous. And the cases hold that a declaration against interest is admissible even though the declarant when making the statement feels the impending presence of death. Jefferson, *supra,* pp. 55–56, and cases cited.

Finally, without reference to the doctrine of declarations against interest, under the circumstances of this case the statement made by Rodríguez at the first opportunity almost immediately after the accident in which he was seriously injured, is a spontaneous exclamation or statement and is admissible as an exception to the hearsay rule, Muñoz Amato, Res Gestae, 14 *Rev. Jur de P. R.* 91, 111–18; VI Wigmore, *supra,* § 1750, p. 142, and cases cited; Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale L.J. 229, 238–39; Note, 32 Cornell L.Q. 115; Mor-

gan, Some Suggestions for Defining and Classifying Hearsay, 86 U.Pa.L.Rev. 258, 266. See *People* v. *Alvarez*, 47 P.R.R. 152; *People* v. *Arenas*, 39 P.R.R. 14; *People* v. *Muñoz*, 68 P.R.R. 159, and cases cited; *Beausoliel* v. *United States*, 107 F.(2) 292 (C.C.A., D.C., 1939); *Lende* v. *Ferguson*, 23 N.W.(2) 824 (Iowa, 1946). Cf. *People* v. *Lugo*, *ante*, p. 134.

As we have seen, if the district court had believed that Pagán had not been carrying passengers for hire and that his companions knew he was driving while drunk and his condition contributed to the accident, the defendants would not be liable. The declaration of Pedro Luis Rodríguez to the policemen on these points was therefore highly material. And in this particular case, where the evidence of the plaintiffs was so weak, the error of the lower court in excluding it was prejudicial to the defendants. For this reason, we shall reverse the judgments for the defendants and grant a new trial.

The fourth error relates only to the case in which Gloria Quiñones sued for the death of her brother, Adolfo Quiñones. The assignment is that she neither alleged nor proved a cause of action. However, she alleged and testified that she was the sole heir of her brother. She also testified that she depended on her brother for support. These facts were sufficient to entitle her to sue for his wrongful death. *Rodríguez* v. *Ell Tee, Inc.*, 57 P.R.R. 930; § 143, Civil Code, 1930 ed.

The fifth assignment is that the lower court erred in not granting the motion for new trial. This motion was based in part on newly-discovered evidence. The defendants attached to their motion a certified copy of a suit for divorce filed in the district court of Aguadilla against Efraín Rodríguez Quiñones. They also attached an affidavit of the secretary of the lawyer who filed the suit that Efraín Rodríguez was in front of his office with Pagán the day before

the accident; that the secretary told Efraín his divorce case was soon to be tried; that Efraín and Pagán both got happy and decided to celebrate the next day by going on a spree; that on the day of the accident he saw them on several occasions driving by his office giving the appearance of having been drinking. An affidavit of the lawyer's process-server corroborated the secretary's story. This evidence was relevant because Efraín's wife testified that at the time of the accident she was living with him and denied she had sued him for a divorce, whereas the theory of the defendants was that when the accident occurred the four occupants of the car were on a drinking spree celebrating the prospective divorce of Efraín.

In support of their motion for a new trial, the defendants also offered as newly-discovered evidence the affidavit of a contractor that López Pérez, who testified that he was an itinerant peddler and had ridden in the *público* for pay, worked the entire day at his trade of assistant mason on a housing project of the affiant several kilometers from the scene of the accident.

The motion for new trial was also predicated on the exclusion of the testimony of the policemen as to the declaration of Pedro Luis Rodríguez and on the allegation that the preponderance of the testimony showed that the vehicle was being used for a purpose completely foreign to the business of defendant Crespo.

We do not stop to determine whether the motion for new trial was untimely or whether, as the defendants contend, the lower court abused its discretion in denying it. The defendants will have an opportunity to present their additional testimony at the new trial which we have already decided must be held.

The sixth error is that the insurance company was not responsible in view of the terms of the policy excluding coverage when the car was not being used to transport passen-

gers for pay or when the driver was intoxicated. It is unnecessary to add to what we have already said on these questions.

The seventh error is that the lower court acted with passion, prejudice and partiality. This error is also moot in view of the result we have reached.

The plaintiffs have appealed from the judgments on the ground that the awards were inadequate. Our holding that a new trial is required makes this appeal academic.

The judgments of the district court will be vacated and the cases remanded for a new trial.

Mr. Chief Justice De Jesús did not participate herein.